# Supreme Judicial Court.

## MASSACHUSETTS, MARCH, 1807.

|  |  |
|---|---|
| *Commonwealth* | CONSPI- |
| v. | RACY. |
| *Dryden Judd, Elizer Judd, and Samuel Judd.* |  |

THE defendants were indicted at the last November term, for that they conspired together to mix, compound and manufacture a certain base material, in the form and color, and of the resemblance of good and genuine indigo of the best quality of foreign growth and manufacture, with intent that the same should be sold at public auction, as good and genuine indigo of the best quality, &c. ; that in pursuance of the said conspiracy they purchased a zeroon of genuine foreign indigo, containing two hundred pounds weight, and mixed the same with starch, blue vitriol, nutgalls, allum, and a decoction of logwood, in such proportions and quantities as made six hundred pounds weight of the base composition, and so manufactured the same as to give it the false appearance of genuine indigo : that they put the same into three bags or zeroons, with the fraudulent intent that the same should be sold at public auction, as, and for genuine indigo, and that the purchaser or purchasers thereof should be cheated or defrauded of their moneys : and that in pursuance of the same conspiracy they offered the same for sale at public auction, and sold the same, as, and for three zeroons of good and genuine indigo, to some persons to the jurors unknown.

Upon not guilty pleaded, the jury found them guilty of a conspiracy to make base and spurious indigo, with a fraudulent intent to sell the same as good and genuine

Com'wealth
. v.
Judd.

indigo; but did not find that the same was sold at auction in the manner set forth in the indictment.

And now *Otis*, of counsel for the defendants, moved that judgment upon this verdict should be arrested : *first*, because the verdict does not find them guilty of any offence charged in the indictment; and *secondly*, if the verdict had found them guilty of the first count in the indictment, that count does not contain a charge of an indictable offence.

By the verdict every part of the indictment is disaffirmed, except the first count, and it has not found the defendants guilty even of the facts alleged in that count. The indictment charges an intent to sell at auction; the verdict finds an intent to sell generally, neither at auction, nor in manner and form, &c. The indictment is for conspiring " to mix, compound and manufacture a certain base material in the form and color, and of the resemblance of good and genuine indigo," &c. The verdict finds "a conspiracy to make base and spurious indigo." The charge is for mere imitation of the thing, the verdict for making the thing itself, but of an inferior quality.

There is no averment in the indictment that the spurious indigo would not be as good and as valuable as the genuine. And if it were so, it would be difficult to show wherein the offence of compounding or of selling it consisted. In the indictment against Mackarty and Fordenbourgh, (2 Lord Raym. 1179.) there is an express averment that the wine was good for nothing, that it was *non potabile nec salubre*, and yet the court doubted.

The only evidence of a conspiracy were the very acts which the verdict disaffirms, and which, indeed,

were the constituent parts of the conspiracy. If it should appear then that in terms the jury have found the defendants guilty of a conspiracy, at the same time that they have declared them not guilty of the overt acts necessary to the existence of a conspiracy, will the court proceed to sentence for the conspiracy?

*Davis*, Solicitor General. The point I shall maintain in this case is, that there is sufficient matter found by the jury to warrant the court in giving judgment against the defendants for a fraudulent conspiracy.

If indeed the verdict should appear so defective as not to authorize a judgment, I shall contend that a *venire facias de novo* should issue, (2 Hawk. P. C. c. 47. sec. 9. in notis, cites Skinner, 667. Ld. Raym. 1521.) But I apprehend that this verdict is not thus defective. It finds the defendants guilty of conspiring to manufacture the base indigo with intent to sell it as good and genuine. The facts are substantially found, as far as they respect the charge of conspiracy, as alleged in the indictment. A false conspiracy betwixt divers persons shall be punished, although nothing be put in execution. (Poulterer's case, 9 Rep. 56. 3d point.) So also a bare conspiracy to do a lawful act to an unlawful end, is a crime, although no act be done in consequence thereof. (Rex v. Edwards et al., 8 Mod. 321.) In the case of Queen v. Bass, (11 Mod. 55.) lord C. J. Holt said, if two or three persons meet together, and discourse and conspire, &c. it is of itself an overt act, and is an indictable offence. In Rex v. Rispel, (3 Burr. 1320.) the court declare that the gist of the offence is the unlawful conspiring. The same doctrine is laid down in Rex v. Alderman Sterling and 17 others, (1 Lev. 125.

*Margin note:* MASSACHUSETTS, 1807. Com'wealth v. Judd.

MASSACHU-
SETTS,
1814.

Com'wealth
v.
Judd.

1 Sid. 174. S. C.) in Childs v. North and Timberly, (1 Keble. 203.) in Rex v. Armstrong & al. (1 Vent. 304.) in Rex v. Edwards & al. (8 Mod. 320.) in Rex v. The Journeymen Tailors of Cambridge, (8 Mod. 8.) in Rex v. Kinnersley and Moore, (1 Str. 193.) and in Regina v. Best & al. (1 Salk. 174.)

In Rex v. Parsons & al. (1 W. Black. 392.) it was determined that the fact of conspiring need not be proved, but may be collected from other circumstances: and the same position is laid down by the court in Rex v. Elizabeth Robinson. (1 Leach's C. L. 44.)

If by adding the words, "in manner and form as set forth in the indictment" immediately after the word "indigo" in the verdict, the court should think the verdict would be more certain, the court has undoubtedly authority to make the amendment. But this is the less necessary, as the same words in the conclusion of the verdict may be taken to refer to every part of it.

*Otis.* All these are cases of conspiracy to injure or defraud some one or more individuals. There is no case in the books like the present, where the intent laid is to cheat all the good citizens of the commonwealth.

The Solicitor General cited from East's Pleas of the Crown: "It is not, however, every species of fraud or dishonesty in transactions between individuals, which is the subject matter of a criminal charge at common law; but in order to constitute it such, according to the doctrine in Wheatley's case, 2 Burr. 1125. and Young's case, 3 Term R. 104. and many other cases, particularly 6 Mod. 42. it must be such as affects the public, such as is public in its nature, calculated to defraud numbers, to deceive the people in general." (2 East. P. C. 816.)

*Otis,* in reply. The most extensive definition of con-

spiracy is in Hawkins' Pleas of the Crown. (R. 2. c. 72. sec. 2.) " There can be no doubt, but that all confederacies whatsoever, wrongfully to prejudice a third person, are highly criminal at common law, as where divers persons confederate together by indirect means to impoverish a third person, or falsely and maliciously to charge a man with being the reputed father of a bastard child, or to maintain one another in any matter whether true or false." The same doctrine is in East's P. C. (2 East. P. C. 823.)

This is allowing a sufficient latitude in a crime which consists barely in a combination to do a wrong thing, whether carried into effect or not. But without a more special description of the intended injury than is contained in this indictment, no man can be prepared for his defence. The crime charged is a fraudulent intent to sell at public auction : at what auction ? To whom ? Suppose the intention was to let it take its chance, without making any false affirmations, or using any false tokens, would this be criminal ?

It is not even alleged that the intention was to sell it within the commonwealth. If the intention was to ship it to a foreign country, though it might be immoral, it would hardly be considered an indictable offence. There are many articles which it is the constant practice of our merchants to adulterate upon exportation, for the purpose of suiting it to the intended market. In doing this, they never suspected that they were contravening the laws of their country. Some years ago, when gold coin passed by tale in the West-Indies, it was a practice in some of our sea-ports to reduce the coins one quarter of their weight. Though this was public-

ly transacted, no indictment was ever heard of on the subject.

As to a *venire facias de novo*, it could be of no avail, if the defendants have been properly acquitted of a part of the offence, and the indictment is insufficient, as to that part of which they are not acquitted. In case of a general verdict, the court will supply merely formal words omitted, but in judging upon a special verdict, they are confined to the facts found, and cannot supply the want thereof by any implication.

The opinion of the court was delivered by

PARSONS, C. J. The defendants have been indicted for conspiring together to manufacture of certain materials mentioned in the indictment, of which one was good indigo of foreign growth, a base composition resembling genuine indigo of the best quality, and of foreign growth, with a fraudulent intention that the same should be exposed to sale, and sold at public auction, as genuine indigo of the best quality and of foreign growth. The indictment farther charges that, in pursuance of this conspiracy, they in fact manufactured this base composition; and that in farther pursuance of this confederacy, they exposed this base composition for sale at public auction, and in fact sold it for genuine indigo of the best quality and of foreign growth.

Upon this indictment the defendants have been tried, and the jury have returned their verdict; that " the defendants were guilty of a conspiracy to make base and spurious indigo, with a fraudulent intent to sell the same as good and genuine indigo : but they do not find that the same was sold at auction in the manner set forth in the indictment."

The defendants now move in arrest of judgment,

*first*, because the verdict has not found them guilty of any offence charged in the indictment; and, *secondly*, if the verdict had found them guilty of the first count in the indictment; that count doth not contain a charge of an indictable offence.

It is necessary first to decide what facts are found in the verdict. The counsel for the government contends, that after the words " genuine indigo," ought to be inserted the words ' in manner and form as is set forth in the indictment.' This is opposed by the counsel for the defendants, who contends that no such amendment ought to be made. We are all of opinion that this amendment be made, that the words are merely technical, and when omitted ought to be supplied. As the jury cannot inquire into the truth of any facts but those which are comprised in the issue, it must necessarily be intended, that whatever facts they find are according to the allegations of the indictment, unless a different intention can be inferred from the verdict. In this case no such different intention can be inferred, but the general intent of finding according to the indictment, is supported by the addition by the jury of these technical words of reference at the close of the verdict.

The verdict being thus amended by inserting the usual words of reference, the counsel for the commonwealth insist that it amounts to a general verdict of guilty as to the first count in the indictment. To this the counsel for the defendants has made two objections. The first is, that the first count charges the defendants with a conspiracy to manufacture a base composition resembling indigo : the verdict finds them guilty of making base and spurious indigo. As the first count alleges that the materials of the base composition are the

same as are after mentioned in the indictment, and among which good and genuine indigo of foreign growth is an ingredient, composing one third of the whole mass, we are satisfied that there is no material variance in the verdict from the first count. A base composition intended to resemble genuine indigo, and one third of which composition was genuine indigo, is very clearly a mass of base and spurious indigo : it is indigo debased and adulterated. The second exception is, that the first count alleges that the intent was to make a fraudulent sale of the base composition at public auction, as and for genuine indigo of the best quality and of foreign growth, but the verdict only finds a fraudulent intention of selling it. This exception, we are of opinion, would have been fatal, if we had not been obliged to omit the verdict to be amended by inserting the technical reference to the indictment. Now we are satisfied that the finding of the jury comprises not only the intention to sell, but to sell in the manner, for the purposes, and as and for the material alleged in the first count.

Several exceptions have also been taken to the first count, as insufficient to support a judgment thereon against the defendants. It is objected that there is no allegation that the defendants intended to affirm at the sale that the base composition was genuine indigo. The indictment alleges that the intent was to sell it as genuine indigo, which, in our opinion, is a sufficient allegation, and the constant usage in cases like this, in principle supports our opinion.

Another objection is, that there is no allegation in the indictment that the base composition was not as useful and beneficial to the purchaser, for every purpose, as genuine indigo ; and then the fraudulent intention al-

leged could not have been committed, as no injury would have been done the purchaser. But the indictment states that the intent was to deceive the purchaser by concealing from him the nature and quality of the commodity he bought, by selling it as a different commodity, and that this intent was fraudulent; and so it certainly was, as every purchaser is entitled to open and fair dealings from the seller. It may also be observed, that if the defendants were skilled in a manufacture of a commodity as useful as genuine indigo, by adding to such indigo other cheap ingredients, so as to treble the quantity, the selling the whole mass as one of the raw materials is undoubtedly a fraud on the purchaser.

It is also objected that there is no allegation in the indictment, that the intent was to defraud the citizens of the commonwealth, or to sell the base composition within the state: and it was insisted that any act done within the state, not prohibited by law, with an intent to practice a fraud without the state, on the citizens or subjects of other governments, was not an indictable offence. Without giving any opinion as to the correctness of this position, and without observing whether, if the intent had been to sell the base composition without the state, it should not have been shown to the jury by the defendants, it is sufficient here to notice that the indictment alleges that the conspiracy was made, and the fraudulent sale designed, with the intent of acquiring the moneys, goods and chattels of the citizens of this commonwealth by fraudulent and dishonest means.

The last and principal objection is, that the first count, charges a conspiracy to do an act not prohibited by law, with an unlawful attempt to defraud, not any individual by name, but whoever might be the purchasers,

MASSACHU-
SETTS,
1814.

Com'wealth
v.
Judd.

MASSACHU-
SETTS,
1814.

Com'wealth
v.
Judd.

without giving any description of them as consisting of certain people, or of a certain class of people, and no act done in pursuance of this conspiracy is either alleged in the first count, or found by the verdict. And it is insisted that this is not an indictable offence.

Certainly as no act is alleged in the first count to be done in pursuance of the conspiracy, and as the jury are silent as to the second count, and negative the third count, the court must consider the defendants as acquitted of all the indictment but the first count. The question is therefore, whether the conspiracy, as alleged in the first count, no act being alleged as done in pursuance of it, is an indictable offence? After fully considering the several cases, the court are satisfied that the gist of a conspiracy is the unlawful confederacy to do an unlawful act, or even a lawful act for unlawful purposes. That the offence is complete, when the confederacy is made, and any act done in pursuance of it is no constituent part of the offence, but merely an aggravation of it. This rule of the common law is to prevent unlawful combinations. A solitary offender may be easily detected and punished. But the combinations against law are always dangerous to the public peace, and to private security. To guard against the union of numbers, to effect an unlawful design, is not easy, and to detect and punish them is often difficult. The unlawful confederacy is therefore punished, to prevent the doing of any act in execution of it. Of this principle the adjudged cases leave no doubt.

That a conspiracy to do a lawful act for an unlawful purpose is an offence, was determined in the cases of the King v. Edwards et al. (8 Mod. 320.) the King v. the Journeymen Tailors of Cambridge, (8 Mod. 11.) and the King v. Robinson. (1 Leach. C. C. 47.)

In the argument by the counsel for the defendants, he admitted that a conspiracy to do a lawful act, with the unlawful intent of injuring an individual, was an indictable offence, although no act were done in pursuance of it; but he insisted that the law was different when the intent was to injure a number of people not described; and that in such case, an act done in pursuance of the conspiracy, must be alleged and found, as a necessary mean to designate the persons intended to be injured. We are not satisfied that the law makes this distinction : it certainly does not in the cases of knowingly having in possession forged bank notes or counterfeit current coin, with the intent to pass them as genuine ; for it is not necessary to allege in these cases an act done in pursuance of the intent. The intent is to cheat whoever can be cheated. In the case at the bar there was the same general intent, to defraud all who could be defrauded. We therefore think the offence to be greatly aggravated by the undistinguishing mischief that was designed. If an authority was required on this plain principle, we think the case of the Journeymen Tailors is substantially in point. The object was to raise their wages ; and the persons who were to be injured, were more immediately any persons who might hire them, and, perhaps, remotely all their customers. Upon the whole, we are satisfied this objection ought not to prevail.

We have considered this record with a disposition to allow the defendants every advantage to which we could believe them entitled. There is also justice due to the commonwealth for the protection of its citizens against fraud and deceit; and after an attentive examination of the motion in arrest of judgment, and of the arguments

MASSACHU-
SETTS,
1814.

Com'wealth
v.
Judd.

in support of it, it is the opinion of the court that judgment be not arrested, but that it be entered against the defendants on the first count of the indictment.

NOTE.—*The defendants were afterwards sentenced to pay a fine of fifty dollars each with costs.*