## CROSS & AL. *v.* PETERS.

If the vendor would rescind a contract for the sale of goods, and reclaim them, on account of fraud in the vendee, it must appear that deceptive *assertions* and false *representations* were fraudulently made, to induce him to part with the goods.

The mere insolvency of the vendee, and the liability of the goods to immediate attachment by his creditors, though well known to himself and not revealed to the vendor, will not be sufficient to avoid the sale.

*Replevin* for a pipe of brandy, and divers other goods. The defendant pleaded that the property of the goods was in one *William Parker*, traversing the property of the plaintiff, on which traverse issue was taken. It was admitted at the trial

Cross & al. *v.* Peters.

of this issue that the property of the goods was originally in the plaintiff, and so continued unless altered by a sale to *Parker;* they having been attached as his property by the defendant, who was a deputy sheriff, by virtue of writs in his hands at the suit of *Gustavus Holm* and of *Benjamin T. Chase.*

To prove the debt of *Holm & Chase* the defendant called *Parker* as a witness, who was objected to by the plaintiffs' counsel as being interested, and also as having committed a fraud in obtaining the goods improperly from the plaintiffs for the express purpose of having them attached at the suit of *Holm* and *Chase.* But the Judge who presided at the trial of the cause admitted him to testify, it appearing that he had not paid the plaintiffs for the property.

*Parker* testified that on the tenth or eleventh day of *March* last he called at the plaintiffs' store, and purchased the goods replevied on a credit of four months, which he took away on the eleventh of *March,* giving no note, and receiving no bill of them at that time, though one of the plaintiffs was present at the delivery, but too busy to write one, or to receive a note. He said that the plaintiffs and two other merchants offered him other goods on credit, which he declined purchasing; and that he stopped payment on the same eleventh day of *March.*

On his cross examination he testified that he had given sundry notes to the *Cumberland Bank* and to the *Bank of Portland,* amounting to $1904, 05, a note to *John Williams* for $900, and another to *Benjamin T. Chase* for $315, all which were indorsed by *Holm,* but none of them were payable on the 11*th March.* He further testified, and it was proved by other witnesses, that on the day and two days preceding his failure he went to eight different stores in the same town and purchased sundry articles of merchandize, all on credit, and for which he was still indebted; but which he said he purchased with no other view than to trade upon as usual, and that he did not know that *Holm* knew of these purchases. It was proved that *Parker* had all said goods carried to his shop on the 10*th* and 11*th* days of *March;* that on the afternoon of the 11*th* which was Saturday, at the urgent request of *Holm,* to which he made some objections, he gave a note to said *Holm* for $2815 70, this being the amount,

as ascertained by a hasty estimation, which *Holm* had indorsed for him on the notes aforesaid, none of which were then payable;—that at the same time he took up the note he had given to *B. T. Chase* for $315, which was indorsed by *Holm,* and was not payable, giving instead of it his own note, without an indorser, and payable on demand;—that he took no discharge, or bond of indemnity from *Holm;*—that *Holm & Chase,* the same afternoon, on obtaining said notes payable on demand, immediately sued out writs against *Parker,* and attached the whole property in his possession, of which the goods replevied were a part;—that after *Chase* had given up the note indorsed by *Holm,* and taken *Parker's* own note in its stead, he said to *Holm* that his own attachment ought to be laid on the goods first, because he had thus exonerated him from his liability as indorser, to which *Holm* assented;—and that *Parker* had been transacting business at a loss before this time, and on one occasion appeared disturbed when a person entered his shop after the goods were removed thither, and found him offering tea under its value.

The counsel for the plaintiffs hereupon contended, 1st that here was sufficient evidence of a conspiracy between *Holm and Parker* to procure the goods for the express purpose of their attachment by *Holm,* for which cause the contract of sale was void, as being a fraud on the creditors, and they might well reclaim the goods:—2d that if the jury were not satisfied of the conspiracy, yet if they believed from the evidence that *Parker,* when he bargained for and received the goods, well knew that he was insolvent, and meant not honestly to pay according to the terms of the contract, and thereby imposed on the plaintiffs, the contract was void for that imposition.

But the Judge instructed the jury that though at the time of making the purchases from the plaintiffs and others it appeared that *Parker* was insolvent, yet his insolvency, unattended by any misrepresentations or falsehood in obtaining the credit, would not render the sale void; and that unless they believed that he obtained such credit with a fraudulent intent and secret agreement or understanding with *Holm* that the goods should be attached by him to secure his debt, the plaintiffs could not maintain the action; but that if they believed that the goods were purchased with such intention and understanding, their verdict

ought to be for the plaintiffs. The jury thereupon returned a verdict for the *defendant*, which was to be set aside and a new trial granted if the Judge's instructions were erroneous, or if *Parker* was improperly admitted as a witness.

*Todd, for the Plaintiffs.*

The evidence reported by the Judge shews that the plaintiffs had the proprietary right to the chattels replevied, and that *Parker* had but a mere possession, unaccompanied with any equity. So jealous is the common law to protect property in the rightful proprietor, that it will not permit it to be divested, but for a valuable consideration, and by the consent of the owner fairly and honestly obtained. 1 *Bl. Com.* 136. 2 *Bl. Com.* 389. 450. Law and equity are the same in all questions relating to the sale of merchandize, which arise between vender and vendee, or promissor and promissee. *Snee v. Prescott* 1 *Atk.* 245. *Wright v. Campbell* 4 *Burr.* 2046.

The law will not permit the stock of one merchant to be pillaged or dissipated by paying the debts of other men. Every stock in trade may be considered as hypothecated to pay its own debts. 1 *Atk.* 233. *Exparte Dumas.* 1 *Cook's Bankr. law* 404. 405. *Fisk v. Herrick* 6 *Mass.* 271.

When goods are sold in this country, since the repeal of the national statute of bankruptcy, in case the vendee, contrary to the just expectations of the seller, should be insolvent and unable to pay for them, equity protects the proprietary interest in the vender for the purpose of reclaiming them, until they are sold by the insolvent vendee to an innocent purchaser without notice, for a valuable consideration, 2 *Bl. Com.* 247. 248—250. *Snee v. Prescott,* 1 *Atk.* 245. *Newson v. Thornton,* 6 *East* 17. and note of *Buller J.* and cases there referred to. *Young v. Adams,* 6 *Mass.* 185. and cases there cited, *Abbot on Shipping* 402. 407. *Hussey & al. v. Thornton & al.* 4 *Mass.* 405. *Buffinton v. Gerrish & al.* 15 *Mass.* 156. *Rogers v. Phinney,* 15 *Mass.* 359. *Cummings v. Brown,* 9 *East* 513. The plaintiffs in the present case might reclaim their goods by any means but by breach of the peace, within the principles of the cases cited.

*Parker* being insolvent, his offering to give a note for the price was a nullity, and the plaintiffs had a right so to regard it. Nothing but payment could divest their title. *Hogan v. Shee,*

Cross & al. *v.* Peters.

2 *Esp.* 522. *Puckford v. Maxwell,* 6 *D. & E.* 52. *Owenson v. Morse,* 7 *D. & E.* 54. *Hodgson v. Loy,* 7 *D. & E.* 446. *Ferse v. Wray,* 3 *East* 100. *Abbot on Shipping* 402. *Nerot v. Wallace,* 3 *D. & E.* 17. *Havelock v. Geddes,* 10 *East* 555.

In England, by the statute of bankruptcy, 21 *Jac.* 1. *cap.* 19. *sec.* 11. when goods unpaid for come to the actual possession of the bankrupt vendee, or to his possession constructively, as in the case of a bill of lading sold in market, the commissioners take a legal title to them by virtue of the statute; it being an execution against all the property in possession of which he was the legal owner, or which he could dispose of. It vests in the commissioners a lawful title to the property not paid for, in which the bankrupt equitably had no interest whatever, and which the unfortunate vender might have reclaimed as well out of the actual possession of the insolvent, as on the road to his hands, but for this statute, which is in derogation of the common law. Here, as we have no such statute, the plaintiffs are entitled to their common law rights, by which they may reclaim out of the actual possession of the insolvent, unless an innocent purchaser should intervene; in which case such purchaser is entitled to hold a fair possession and an equitable title. As the goods, being in possession of the insolvent, drew the money from the pocket of the purchaser, the laws of property say he shall hold the goods; and equity follows the law in this case, in conformity to the rule that when one of two innocent persons must suffer by the acts of a third, he who enabled such third person to occasion the injury must sustain the loss. *Lempriere v. Pasley,* 2 *D. & E.* 490. *Brown v. Heathcote.* 1 *Atk.* 163. *Mace v. Cadel,* *Cowp.* 232. *Gordon v. East, Ind. Co.* 7 *D. & E.* 231. *Livermore v. Bagley,* 3 *Mass.* 498. 4 *Burr.* 2481.

The evidence discloses a manifest *fraud* in *Parker,* which avoids the agreement.

Legal frauds vary in shade, from the unjust delay of payment when a debt is due, to the crime of larceny. The law forbids them all, and commands the exercise of good faith.—— Frauds not indictable are as destructive of all contracts with which they intermingle, as if they were thus punishable. *Parker,* in keeping up his sign in view of the plaintiffs, occupying a shop, and offering to them his credit for their goods, affirmed

that his credit, so offered, was solid. These acts were tacit assertions, and symbolical warranties to the plaintiffs that his credit was good, but were stronger and more likely to deceive than any mere verbal assertions, *without* such acts, could possibly have been. *Rex v. Wheatly*, 2 *Burr*. 1127. *Park's Insur*. 178. *Twine's case*, 3 *Rep*. 80. *Cadogan v. Kennett & al. Cowp*. 432. *Martin v. Pewtress*, 4 *Burr*. 2478. *Harman v. Fisher, Cowp*. 122. *Trueman v. Fenton, Cowp*. 544. *Parley v. Freeman*, 3 *D. & E*. 51. and the cases cited by *Buller J. Lyon v. Mills*, 5 *East* 437. *Emerson v. Brigham*, 10 *Mass*. 196. *Bradley v. Manley*, 13 *Mass*. 144. *Parkinson v. Lee*, 2 *East* 323. Covin is always matter of law arising on the facts in each particular case. *Powell on Mortg*. 63. 69. 70. *Co. Lit*. 35. *Foxcroft v. Devonshire*, 4 *Burr*. 2480. *Cockshot v. Bennett*, 2 *D. & E*. 765. *Robson v. Calze, Doug*. 228. *Devan v. Watts, Doug*. 91. 92. 2 *Bl. Com*. 478.

*Parker*, the witness objected to, was improperly admitted. Having perpetrated the fraudulent acts apparent on the record, he ought not to be called by a *particeps fraudis* to testify against the legal inferences which fairly result from those acts. As the law in some cases departs from its general rules, and admits interested witnesses, for the purposes of justice, and to discover frauds, and this from necessity; so for the same reasons, and within the rule of a moral necessity to prevent injustice, *Parker* is incompetent in the present case. *Abrahams v. Bunn*, 4 *Burr*. 2258. *Warren v. Merry*, 3 *Mass*. 28. and cases there cited. *Churchill v. Suter*, 4 *Mass*. 161. *Bean v. Bean*, 12 *Mass*. 20. *Peake's Evid*. 138. *McNally's Evid*. 256.

E. *Whitman, for the defendant.*

As far as the argument on the other side proceeds on the ground of fraud and collusion between *Parker* and *Holm*, the verdict itself is a sufficient answer, for it negatives the existence of such fraud.

The law of this case is settled in *Hussey v. Thornton*, 4 *Mass*. 405. where the true principle is the *voluntary and unconditional delivery* of the goods by the vender, and such was the delivery in the present case. Had this been a sale of land, instead of goods, and the deed acknowledged and recorded, the circumstances being precisely like those in the case at bar, will it be

pretended that the grantor could reclaim the land? Yet this is the conclusion to which the principles advanced on the other side would directly lead. The single fact of insolvency is no mark of fraud. If it were so, then every merchant whose concerns are extensive and intricate, and whose ships at sea are all lost, he not knowing the fact, would nevertheless be bound at his peril to be conusant each moment of the condition of his property; and if insolvent, though rendered so by events just happened in another quarter of the world, goods sold to him under apparently the most fortunate circumstances might be reclaimed.

As to the admission of *Parker*,—the policy of the law does not exclude him; for it excludes no person but the indorser of a promissory note or bill of exchange. Nor was he disqualified by his interest, for this was equal. At all events he must either pay the plaintiffs for the goods, or *Holm* for the value of them. Neither was he guilty of any fraud. He stated nothing falsely; he concealed nothing; and his circumstances were not worse than those of many merchants who continue to transact business and at last retrieve their affairs.

    *Longfellow*, in reply.

The jury were only instructed to consider the question of fraudulent conspiracy between *Parker & Holm*, and *this* fraud is all which is negatived by the verdict. The fact of a purchase by *Parker alone*, with a secret intent to defraud the plaintiffs, was never presented to them, and of course the verdict finds nothing respecting it. The case of *Buffinton v. Gerrish* & *al.* 15 *Mass.* 156. fully establishes the position that fraud in the vendee vitiates the contract; and it is clear that the fraudulent *suppressio veri* is as fatal as the *allegatio falsi*.

The witness, *Parker*, though his interest were equal, ought to have been rejected on the ground of public policy, as *particeps fraudis*. He was insolvent, and knew himself to be so. He bought goods at several places, and, as soon as they were in his possession, made a note payable on demand,—to a friend to whom he was not indebted,—who was his indorser, indeed, but had never been called upon,—and this friend instantly attached them;—a transaction carrying, in all its stages, the strongest indications of fraud. The only cases where a *particeps criminis*

is admitted to testify, are those in which his testimony is indispensably necessary for the furtherance of public justice ; but he is never considered admissible to *disprove the existence* of the fraud.　Yet for this purpose alone he was in the present case erroneously admitted.

MELLEN C. J. afterwards delivered the opinion of the Court, as follows.

Two questions are presented for consideration ; one, as to the admission of *Parker* as a witness;—the other as to the opinion delivered by the presiding Justice to the jury.

As to the first question, the objection seems unfounded.—The case finds that the goods the witness purchased have not been paid for :—He therefore stands entirely indifferent.　He is liable to the plaintiffs for the price of the goods, if they *do not* succeed in this action : and will *remain* liable to *Holm* if they *do* succeed.　Let this cause be decided *either* way, one of the witnesses debts must be cancelled and the other will remain due and unpaid.　To this point may be cited the case of *Bean v. Bean,* 12 *Mass.* 20.　The objection as to *interest,* therefore fails.　But it is urged that he is inadmissible on the ground of his connection with the alledged fraud.　In the case in 4 *Mass.* 492. cited by the plaintiffs' counsel, such an objection is considered as of no importance.

As to the other point reserved, the presiding Justice instructed the jury that unless they should be satisfied that the goods replevied were purchased by *Parker pursuant to some secret agreement or understanding between him and Holm,* so that they might be attached by *Holm* for his indemnity, they ought to find in favour of the defendant.　It is now necessary to examine and determine whether that instruction was correct.　If not, the verdict must be set aside and a new trial granted.　As it appears by the report of the case that no arts or devices were practiced, nor any false representations or pretences whatever were made by *Parker* at the time of purchasing the goods on credit, or at any other time by means of which he obtained the credit; and as the jury have found that there was no such concert or secret agreement or understanding between *Parker* and *Holm ;* and as it does not appear that *Parker knew,* at the time,

that he was insolvent, though in fact he *was* so ; the simple inquiry is this : " If a man doing business as a trader and in *good credit* " (though insolvent at the time, but not aware of that fact) obtains " goods on credit in the town where he lives and is known, without " practising any artifice or making any false representations or " pretences, or in fact any representations or pretences at all ;— " and removes these goods to his own store openly : Can such " vender, upon learning the insolvency and circumstances of the " purchaser, *reclaim* the goods in the possession of the purchas- " er or maintain replevin for them against the attaching officer, " on the principle of his legal right to rescind the bargain ?"— This seems a clear and fair statement of the question.

If in the present case the plaintiffs had a right to rescind the contract of sale, it must be on the ground of *fraud* on the part of *Parker* the purchaser ; and though in many instances contracts may be avoided by reason of the fraudulent conduct of one of the parties : and the party attempted to be charged may for that cause be excused from the performance of his contract ;— yet in cases of the kind under consideration, where a vender claims the right of *rescinding a contract of sale* which has been carried into effect and executed on his part by a *delivery of the articles sold,* it would seem that his right to rescind must be founded on such a fraud on the part of the vendee as would render him liable to an *indictment ;* or if not, would at least sub- ject him to *an action of deceit :* or in other words, that a vender has not a legal right to *rescind* a contract of sale and reclaim the goods sold, unless such fraud was practised in making the con- tract, that if the vender *did not rescind it,* he would recover dam- ages against the vendee for the injury sustained by that fraud. —But without advancing any direct opinion as to the correct- ness of this principle, it appears to us to be clear that it would require as much proof of fraud and false representation to maintain an action against a *vendee* in the above circumstances, as an action against a *third person,* by whose fraudulent and false representations the *vender* was induced to give credit to the *vendee.*—Artifice, misrepresentation, falsehood and fraud constitute the foundation of all such prosecutions.

It may not be useless to examine the subject in both points of view.

Cross & al. *v.* Peters.

In the case we have stated, would an indictment lie against the purchaser?

1. Cheating, at *common law* was an indictable offence; but to constitute the offence two things were necessary. *First*, the act must be of such a nature as to *affect the public. Secondly*, it must be such against which common prudence could not have guarded. 1 *Hawk. Ch.* 71. 2 *Burr.* 1125.

2. The statute of 33 *Hen.* 8. *ch.* 1. made it an offence to obtain money, goods, &c. by *a false token.* Though this statute in some respects altered the common law, it did not affect those cases against which *common prudence* would be a sufficient security.

3. The statute of 30 *Geo.* 2. *ch.* 1. goes still further and makes it an indictable offence to obtain money, goods, &c. upon a *false pretence.* Before this last statute was enacted, it was not an offence to obtain money, goods, &c. by a *false pretence,* unless *false tokens* were used. *See* 6 *Mod.* 105. 301. 42. 61. 5 *Mod.* 11. 11 *Mod.* 222. *Ld. Raym.* 1013.

This statute was never in force in *Massachusetts,* as we are informed by *Parsons C. J.* in the case of *Commonwealth v. Warren,* 6 *Mass.* 72. But the *Stat.* 1815. *ch.* 136. contains similar provisions, and therefore those decisions which we meet with in the English books upon the *Stat. Geo.* 2. are applicable to the statute of 1815.

In the case of *Young in error v. Rex,* 3 *D. & E.* 98. it is decided that to bring a case within the act of *Geo.* 2. there must be false pretences or stories, and misrepresentations, deceiving and intended to deceive the person with whom the offender is dealing, and fraudulently contrived for that purpose.—*Buller J.* says, " Barely asking another for a sum of money, is not suf- " ficient : but *some pretence* must be used, and this pretence must " be *false,* and the *intent* is necessary to constitute the crime."— The case of *Rex v. Lara,* 6 *D. & E.* 565. shews the nature of those *false tokens* and *pretences* which are necessary to support an indictment.—*Lara* pretended that he wished to purchase certain lottery tickets to a large amount. He did so, and paid for them by a draft on a certain banker with whom he *said* he had funds, *though at the time he* KNEW *he had not.*—The Court decided that the indictment could not be maintained. *Ld. Ken-*

*yon* observed that *Lara* used nothing but his own assertion to gain credit,—" that he sat down and drew a check on a Bank- " er ; but it would be ridiculous to call that a false token :—that " it left his credit just where it was before. What the defend- " ant did was highly reprehensible and immoral; but as he " used no false tokens to accomplish his designs, judgment must " be arrested."

*Hawk. B.* 1. *ch.* 71. *sect.* 2. says that " the deceitful receiving " money from one man to another's use upon a false pretence " of having a message and order to that purpose, is not punish- " able by criminal prosecution, because it is accompanied by " no manner of artful contrivance ; but wholly depends on a " bare, naked lie."

The above-cited case of *Commonwealth v. Warren* was decid- ed before the act of *Massachusetts* for the punishment of Cheats was passed. Had it been in force at the time of the trial, *Warren* would probably have been convicted, as he used sev- eral false pretences to obtain credit by means of which his fraud was successful. The case further shews *that if another person had been connected with him in the fraud*, the offence would have amounted to a conspiracy *without any false pretences ;* and might have been charged and punished as such.—This distinc- tion it is of importance to notice, as it may have a bearing on the main question reserved in this cause ; and for that reason it may under this head be also remarked that where two or more *conspire* to do an unlawful act, or a lawful act for an unlawful purpose, it is a crime ; and the *gist* of the conspiracy is the *un- lawful confederacy. Commonwealth v. Judd & al.* 2 *Mass.* 329. *Commonwealth v. Tibbetts* & *al.* 2 *Mass.* 536.

Our next inquiry is whether, in the case stated, an action of deceit, or an action on the case in nature of deceit, would lie for damages occasioned by the fraud.—Our Law books must answer the question.

Some of the cases relating to this point are founded upon an al- ledged fraud and deceit on the part of the *vender :* others on the part of the *vendee.*—Those which are grounded upon an *express warranty* do not come within the range of our present view. In *Ld. Raym.* 519. it is settled that *possession* is a warranty of the *implied* kind, that the goods belong to the seller ; for possession

is a colour of title, and an action lies upon a *bare affirmation* of the possessor that the goods are his own. *Roberts on frauds* 523.—" An action upon the case lies for a deceit when a man does any deceit to the damage of another. *Com. Dig. Action on the case for deceit A.* 1." " *Fraud* without *damage* or *damage* without *fraud* gives no cause of action—both must concur." 3 *Bulst.* 95. *Roberts* 523. " No action lies against a man for his declaring that a certain person would have given him a *certain sum* for his farm ; though no such offer was ever made.— It is a mere ground of estimation with which no prudent man should be satisfied ;"—but a declaration of *the fact* that, the *rent* was so much, when it was not, whereby a purchaser is deceived, will support an action. See *Roberts* 523. and the cases there cited. Many other cases of false or fraudulent representations on the part of the *vender* might be stated, shewing the principles on which actions for deceit may be maintained against them :—but these are sufficient. It is much more to our present purpose to examine those cases in which actions have been supported against *vendees* or *receivers of money*, for fraud and deceit on *their part*, and the facts necessary to support such actions. In the case of *Buffinton & al. v. Gerrish & al.* 15 *Mass.* 156. *Walker* was guilty of gross fraud, and stated a series of falsehoods well calculated to gain him credit, by inspiring confidence in his responsibility ;—and by means of this fraud and false pretence he succeeded in obtaining credit to a large amount. In *Badger v. Phinney*, 15 *Mass.* 359. *Rand*, the minor, obtained credit by falsely affirming that he was of full age : and this affirmation was pointedly made, too, in reply to the inquiries of *Badger. Putnam J.* in giving the opinion of the Court says, " the goods were delivered to the plaintiff *Rand* be- " *cause* he undertook to pay for them *and declared he was of full* " *age.* The basis of this contract has failed from the fault if " not the *fraud* of the infant ; and —— the *fraud* which *induced* " the contract, furnishes the ground for the impeachment of it. " Thus in the case of *Buffinton & al. v. Gerrish & al.* where " one purchased goods on credit by *means of false representa-* " *tions*, it was holden the vender had not parted with his proper- " ty, but might maintain replevin against the attaching officer."

In the case before mentioned of *Commonwealth v. Warren*, the

Court observe that the man defrauded should seek his remedy by action. In that instance false and fraudulent representations had been made. In the important case of *Pasley v. Freeman*, 3 *D. & E.* 51. *Buller J.* observes, " The fraud is that the defendant " procured the plaintiff to sell goods on credit to one whom " they would not otherwise have trusted, *by asserting that which* " *they knew to be false.* Here then is the fraud and the means " by which it was committed :—the *assertion* alone is not suffi- " cient : but the plaintiff must go on and prove that it was *false* " and that the defendant *knew it to be so.*" The action of *Pasley v. Freeman* was maintained upon the principle that the defend- ant had been guilty of that fraud and misrepresentation to in- duce the plaintiff to sell goods on credit to *Falch*, which would have maintained the action against *Falch* if he had himself been guilty of the fraud and falsehood.—*Buller J.* concludes with observing that " if a man will *wickedly assert* that which he knows " to be *false* and thereby draw his neighbour into a heavy loss " he is liable in damages." *Ashurst J.* in delivering his opinion says " In order to make it actionable it must be averred that " the defendant intending to deceive and defraud the plaintiffs, " did *deceitfully encourage and persuade* them to do the act and " for that purpose made the *false affirmation*, in consequence of " which they did act." " If *A.* send his servant to buy a " horse, who buys it and pays for it, and the seller *affirms* to *A.* " that he was not paid, *whereby A.* pays him ; an action lies. So " if a man affirm himself to be of full age, when he is an infant, " and *thereby* procure money to be lent on mortgage." See *Com. Dig. action on the case for deceit A.* 10. and the authorities there cited ; also *Bean v. Bean,* 12 *Mass.* 20. Numerous other in- stances of similar imposition and falsehood might be collected and stated ; but it is not necessary, as they are all founded on the same principle, viz. that the money, goods or credit had been obtained by means of false and fraudulent assertions of the defendant. We have not been able to find a *single instance* in which an action of this kind has been supported, except where the party charged had succeeded in his plan by *false assertions* and *fraudulent misrepresentations.* In 3 *Chitty on pleading* are a number of forms of declarations in actions of deceit—one for selling goods as and for a larger quantity than there was ;—one

Cross & al. v. Peters.

for selling a piece of land as containing more acres than it did contain ;—one for misrepresenting the value or profits of a certain trade ;—one for representing himself as authorized by a third person to do a certain act or receive a certain sum of money ; and one for personating the plaintiff. In each of these forms there is a strong averment that the defendant made a direct, false and fraudulent representation of facts, with an intent to accomplish his object and defraud the plaintiff; and that by means thereof he had succeeded.

We have thus taken a brief review of some of the general principles of law applicable to *indictments* for frauds and deceits, and to *actions on the case* brought by the party injured against him who commits the fraud ; whether he is the *vendee* of the goods or his *artful* and *fraudulent* friend. It appears by the precedents to which we have alluded, that in case for a fraudulent purchase or obtainment of money, the declaration must contain an allegation that the plaintiff was imposed upon by artifice and false declarations—calculated and intended to deceive ; and in all the cases which we have cited, the prosecution on civil action was maintained or defeated, according as the proof appeared on trial touching the *false and fraudulent representations* alledged to have been made by the party charged ; he knowing them to be false and deceptive.—Judging, then, from legal forms and decided cases, it seems to be settled that *deceptive assurances* and *false representations fraudulently* made are essential to the support of an indictment or civil action for a fraud committed in the manner above supposed ; and of course, that such proof is equally necessary to the support of an action of replevin by the vender who claims the right of rescinding the sale he has made on the ground of fraud in the vendee. Let us for a moment look at the facts in the case at bar.—*Parker*, it turns out, was insolvent when he purchased the goods, but there is no proof that he was apprized of the fact ;—he bought the goods on credit in usual form, refusing the offer of further credit from the plaintiffs :—he made no professions or promises ;— no representations or assertions ; practised no other art than obtaining the credit without *disclosing his insolvency ;* a fact, which it does not appear that he himself knew. These facts are essentially different from those appearing in the cases we

have collected and stated ; in which it is declared not only that there must have been *assertions* and *representations* made—but they must also have been *false :* and to complete the proof the defendant must have *known* them to be *false.* Under these circumstances we are not aware of any legal principles on which an indictment could be sustained or an action for deceit against *Parker ;* and we do not perceive how it is competent for the plaintiffs to rescind the contract they have made and reclaim the goods in this action, unless upon the *ground of concealment,* which has been also urged by the counsel for the plaintiffs, and which we will presently consider.—As the jury have decided that no secret understanding existed between *Parker* and *Holm* of a fraudulent nature relating to this property, we do not see why the rule of law is not applicable in this instance, *melior est conditio defendentis.* The plaintiffs may have been guilty of negligence or want of due care ; but as it regards the question before the Court the defendant and he whom he represents seem not liable even to that imputation.

But it is contended by the counsel for the plaintiffs that a vender may rescind a contract of sale on account of fraud in the *vendee* by *concealment of the truth* as well as by *false assertions and misrepresentations ;* that the consequences are the same and of course the law is the same. Before answering this argument, it is natural to inquire wherein this *concealment* consisted.—It is stated by the counsel for the plaintiff that it was the duty of *Parker,* as an honest man, to have disclosed his insolvency to the plaintiffs at the time he applied to purchase the property. The first reply to be given, is, that it does not appear in the case that he knew he was insolvent.—He might be suspicious of it, and he might not be ; on that point we have no information. It does not appear, then, that he concealed any facts which he was bound to disclose.—If the principles of law respecting this part of the cause were to be carried to the same extent by the Court as they have been in the argument of the counsel, all confidence in dealing would be destroyed, and perfect confusion, as to the title of personal property, would be the consequence.—The vendee would never feel safe in purchasing, nor any other person safe in purchasing of him, lest the *creditor* should afterwards discover that the vendee, when he purchased,

was actually insolvent, and that those who afterwards bought of him knew of the insolvency ; and then should come forward, with a sweeping claim of the property he had sold, on the principle of rescinding the sale for a fraudulent concealment.—— But supposing that *Parker did* know of his own insolvency at the time of his contract: we are perfectly satisfied that the sale is not void on the ground of fraud because he did not disclose the fact.

It is true, the fraudulent concealment by the *vender* of a se-cret defect in an article sold by him, wholly unknown to the *vendee*, may be the foundation of an action for damages by him against the vender, and perhaps authorize the *vendee* to rescind the contract on discovery of the fraud ; because the law implies a *warranty* that the goods or articles sold are of a merchantable quality. *Gilb. Evid.* 187. *Roberts* 523. But we apprehend no case can be found by which it has been settled that the law *implies* any thing like a warranty on the part of a purchaser that he is a man of property, and *sound* as to his pecuniary concerns.—In the commerce and intercourse of mankind, such an implication was never understood to exist.

It is also true that in the case of policies of assurance the *concealment of the truth* is nearly allied to *misrepresentation.* If the fact be material, it avoids the policy. But it is not on the *ground of fraud* in the concealment that the contract is void ; because if the concealment be the effect of accident or mistake, negligence or inadvertence, it is equally fatal to the policy as if it were intentional and fraudulent.—See *Marshal* 347. and cases there cited. But it will be difficult to find a case where a pol-icy was declared void, because the *assured,* when the policy was effected, was insolvent and yet concealed *that* fact:—still the reasoning of the plaintiffs' counsel seems to lead to the conclu-sion that the policy would in such a case be void because the assured was insolvent and unable to pay the note he had given for the premium.—We apprehend no conclusion can be drawn from these principles of the law of Insurance unfavourable to those on which we place the decision of this cause.

We have before stated that there might be a conspiracy be-tween two or more to obtain goods or money from another *with-out any false pretences,* &c. and which would be punishable as

a crime. In reference to this principle of law the jury were instructed that if they believed such conspiracy or secret arrangement existed between *Parker* and *Holm*, though there were no false pretences or representations, they ought to find a verdict for the plaintiffs, but not otherwise.

It is to be lamented, if the plaintiffs have lost their property by reposing confidence where it was not deserved; but this is not a circumstance for our consideration in the decision of the cause.

On the whole, after much thought and the most careful examination, we are satisfied with the correctness of the instructions which were given to the Jury; that the motion for a new trial must be overruled, and that there be an entry of

*Judgment according to the verdict.*