Johnson J.
delivered the opinion of the Court.
We concur with the presiding judge, that the evidence of Harvey as to what Hartly swore on the former trial, was admissible in evidence. The rule that what a deceased witness has sworn on a former trial of the same case between the same parties may be received in evidence on a second trial, is a very familiar one, and of almost daily application. Neither the notes of the presiding judge, nor of the attorney general, or any one else, of the evidence given on the former trial, are of themselves evidence. I know they are frequently resorted to, and received by courtesy, but we know that they are frequent, ly taken very loosely, indicating only tho, conclusions of fact drawn by the judge from the circumstances stated, and without the expectation of their ever being used for any other purpose than to refresh his memory in summing up to the jury, or reporting the case; and it would be of mischievous tendency to regard them as evidence, for if they were, being in writing, they would be conclusive. The proof here, then, was the only legal proof, that of a witness sworn to testify viva voce what was stated by the deceased witness. The circumstance that a juror was withdrawn on the first trial, and no verdict found. *284 cannot vary the question, for the evidence derives its weight alone from • the circumstance that it was given on oath, when the parties had an opportunity of examining and cross examining the witness.
The motion in arrest of judgment involves a question of much greater difficulty and importance. It admits that the defendants conspired together to destroy the last will and testament of Christopher Watts, with the intent to defraud the devisees and legatees under that will; and the question is-, whether that is an offence punishable by indictment.
The Stat, of 83, Ed. I. which is of force in this Slate, would seem to have been intended to define the offence of conspiracy, and. limit it to such as confederated together, falsely and maliciously, to indict or move and maintain pleas against others, or who undertake to hear or maintain quarrels, pleas or debates, that concern other’ parties. But the authorities all agree that this statute is declaratory of the common law, and that other acts, not therein enumerated, constituted conspiracy, and are indictable at the common law: and Sergeant PXawkins says, that all conspiracies whatsoever, wrongfully -to prejudice a third person, are highly criminal at the common law : and the examples which he puts, are where divers persons confederate together, by indirect means to impoverish a third person; or falsely and maliciously to charge a man with being the father of a bastard child; or to maintain one another in any matter,whether it be true or false. Haw. P. C. Book I. ch. 72, see. 2.
This definition is exceedingly broad, and would seem to include every combination to do wrong to another by any possible means; but that it ought not to be so understood, we have the authority of some of the most eminent judges of the English Bench, as I shall hereafter have occasion to shew; and the great difficulty lies in determining the precise boundary between the class of injuries against individuals for which a prosecution for a conspiracy will or will not lie; and I confess that I find great difficulty in reconciling the authorities on this question to any definite principle.
In regard to the public, all agree that a combination to do a public mischief, is indictable. As to endanger the public health by vending unwholesome provisions; .to raise the price, of public funds by false rumors or other unlawful means: To manufacture, for sale at vendue, a base article, so nearly resembling that which is genuine and valuable, as to be calculated to deceive the public, is a combination amongst a class of laborers to raise their wages by unlawful means. So of a conspiracy to defraud the revenue, Mawbey’s case, 6 Term Rep. 619; M’Carty’s case, 2 Ld. Ray. 1179; De Buringer’s case, 3 Maul & Selwyn, 67; Judd’s case, 2 Mass. Rep. 329; and in *285 Hevey’s case, 2 East, P. C. 858, note. A conspiracy to make a fraudulent acceptanee.of a bill of exchange, and uttering the samo as true, with the intent fraudulently to obtain goods upon the faith thereof, was held to be indictable as a conspiracy, obviously upon the ground that a bill of exchange, when accepted, is a quasi currency, and calculated to impose on the community, and therefore a fraud, affecting the public. It would seem indeed, that the rule was universal, that all conspiracies to impose on or injure the public, arc indictable. Vide Hawk. P. C. Book 1, ch. 72; 2 Russell, 1800.
In respect to conspiracies affecting individuals, the text of Hawkins, when'.understood in its largest sense, is rather too broad. It cannot be true that every combination wrongfully to injure a third person is indictable as a conspiracy — for the withholding a just-, debt, the commission of an ordinary trespass, and every cause for which an action would lie, is a wrong and an injury. In Turner’s case, it was held that an indictment would not lie for a conspiracy to commit a civil trespass by hunting on one’s ground, and in that case Lord Ellenborough intimates pretty clearly that the doctrine of conspiracy had been carried quite as far as there was any warrant to be found for it in the law; and the same learned judge held, in Pyrul’s caso, 1 Starkie’s Rep. 402, that an indictment could not be maintained for a conspiracy to commit a fraud in the sale of an unsound horse. The cases referred to in the text, are Aider-man Sterling’s case, 1 Lev. 125-6, which is also reported in 1 Sid. 174, and Tymberly’s case, 1 Keble, 254. Sterling’s case was founded upon a conspiracy amongst the brewers of London to excite the common people to pull down the- Excise House, whereby the excisemen would be impoverished, and rendered unable to pay the King’s revenue; and the judgement of the Court proceeded upon the ground, that it was calculated to injure the King’s revenue, whereby the public were injured. Tymberly’s case was for a conspiracy to charge one with being, the father of a bastard child, with an intent thereby to extort money from him; and the judgment of the Court proceeds on the ground that the tendency of the conspiracy was to disgrace the prosecutor, to charge him for the maintenance of the bastard, and to subject him to corporal punishment. When the principle comes to be fully developed which has been contended for, I think it will be found that an indictment for a conspiracy will not in general lie in those cases of fraud or trespass not affecting the person, for which an action or suit at law would afford adequate relief, if the intention .of the conspirators was consummated when the means intended to be resorted to are private.
But all conspiracies to injure others by perverting, obstruct- *286 or defeating the course of public justice, whether in a course of criminal or civil proceeding, are indictable; Co. Lit. 161-6, Note 13—and it is against this class of cases that the of 33 Ed. 1. seems to have been principally directed. Thus are all conspiracies to make false and malicious charges of a criminal nature, against another, to prevent the course of justice by procuring a false certificate that a highway was out óf repair. Russell on crimes, 1800-4. In Taylor’s and Robinson’s case, 2 East. P. C. 1010, 1 Leach 37, it was held, that where a woman living in the service of her master, conspired with another man, that he should personate her master, and in that character should solemnize a marriage with her, which was accordingly done, for the purpose of afterwards raising a spurious title to the property of the master after his death, the offence was indictable; and it seems to have been taken for granted, for the only ground of objection was, that the injury was not consummated.
The principle on which this case proceeds is, that it was an attempt to fabricate evidence, and holds out a false colouring, in order to prevent the course of public justice; not that in itself the act so operated, but that it was intended so to operate; and in this respect it bears, I think, a strong analogy to the case under consideration. Here the act done was not, it is true, intended to fabricate evidence to deceive, but to destroy it for the purpose of deceiving, in a Court of justice. The testator’s will constituted the only evidence of the disposition he had made of his estate after his death, with a view of substituting it for the disposition which the law makes, and that through the agency of a Court of justice — the act charged had for its object the perversion of justice, and was as well calcula* ted to produce that result as the fabrication of evidence; and if the case of Taylor and Robinson be law, this prosecution is well supported.
Upon the first view of that case, I confess I was disposed to think that its correctness was questionable, and I felt myself also much embarrassed' by Charles Miller’s case, which came before this court in Columbia, in May 1828. There, several had conspired to obtain a promissory note from the prosecutrix, a woman, and to seduce her to go out of the neighborhood in which she lived, under the pretence that one of them would marry her, and thereby to furnish them with a pretext for levying an attachment on her property; and which was accordingly done, and it was held that an indictment for a conspiracy would not lie.
But I well recollect that the resolution of the court was pronounced with great hesitation, and much doubt as to its correctness, and I have used this occasion to investigate the *287 question more fully, and am satisfied that it was wrong.
Attempts to suborn a witness to commit perjury or to prevent his giving evidence, are offences against public justice; and there can be no well founded reason why the fabrication of evidence not involving perjury, or the destruction and suppression of that which is good, should not equally be so; they are alike calculated to pervert the public justice of' the country, and to do individual injustice.
I am of opinion, therefore, that this motion must be refused, and it is so ordered.
O’Neall & Harper, Js. concurred.