Spencer,
Senator. The first point which I shall exam ine in this case is, the objection that the means by which it was intended to accomplish the conspiracy, are not’ set out in the indictment. The general principle that-every man is entitled to a specification of the charge against him, is so deeply engrafted into our criminal law, and is so essential to the enjoyment and protection of personal-liberty in a free country,"that it must bé a waste of time to enforce it by argument or authority. The rule, founded upon this principle, as given by an excellent modern writer on criminal law, (Mr. Chitty, in his 1st vol., p. 169,) is, that “ every indictment must contain a description of the crime of which the defendant is accused, and a statement of the facts by which it is constituted, so as to identify the acccusation, lest the grand jury *should find a bill for one offence, and the party be- put upon his trial for another, without any authority.” This simple and plain rule is so agreeable to common sense and common justice, that it needs not any authority to support it.. But authorities are abundant, and it may safely be assumed as universal. " The apparent exceptions are few: One of them is the case of an indictment for being a common barrator, in which, from the difficulty of specifying particular instances' on the record, a generality of form is allowed ; but the evil is remedied by the court’s requiring from the prosecutor a bill of particulars of the instancés of barratry intended to be proved on the trial; so that, in truth, .even this case is not an exception to the rule. The cases of indictments against common scolds, houses of ill-fame, common nuisances, &c., partake of the subject, and must necessarily be as general as that' is, and do not contravene the rule.
In order to apply the rule to the present indictment, it becomes necessary to strip it of all unnecessary verbiage, and see precisely what it is. The following is a careful abstract of it: “ That the defendan ts, intending unlawfully by indirect mean's to cheat and defraud a certain company *615 and divers others unknown, of their effects, did fraudulently and unlawfully conspire together, injuriously and unjustly, by wrongful and indirect means, to cheat and défraud the said company and unknown persons of their effects; and that in execution thereof, they did by certain undue, indirect and unlawful means,, unlawfully cheat and defraud the said company and unknown persons of divers effects.” This is the whole bone and substance of it. Is this, in the language of the rule, “ a certain description of the crime of which the defendants are. accused ?” Is it “ a statement of the facts by which that crime is constituted 1” Does it “ identify the accusation so that the party cannot possibly be tried for any other offence than that which was before the grand jury that found the bill 1”
It is agreed by all that there are two kinds of conspiracy, into one or the other of which, all offences of that description may be divided. The jirsi, where the conspiracy is to commit a criminal act, in which case it is immaterial by what *means the object is to be accomplished; second, where it is to commit an act, not criminal in itself, by criminal means. Here the object is immaterial, and the illegality of the means used or intended to he used, constitutes the offence. In the first ease, it is the nature of the object; in the second, the nature of the means by which the offence is ascertained.
The object stated in this indictment, is, “ by wrongful and indirect means to cheat and defraud the company and unknown persons.” But all cheats are not criminal. Many acts which would be denounced as cheats by the principles of morality are not legally cheats. Thus where a person got possession of a promissory note by pretending that he wished to look at it, and then carried it away and refused to return it to the holder, this was held, in the case of the People v. Miller, (14 John. Rep. 372,) a mere private fraud and not punishable criminally. To determine, then, whether the object stated in this indictment was in itself criminal, it becomes necessary' to ascertain what cheats are criminal. At the common law, it must be such a fraud as would affect the public or as common prudence *616 cannot guard against; as by using false weights, or by some false tokens. (3 Chitty’s Grim. Law, 399. 2
Strange, 1127. 7 John. Rep. 201.) A statute was passed in England in the 30th year of Geo. 2, and a similar one in this state, (1 R. L. 410,) extending the offence, and punishing those “ who knowingly and designedly, by false pretence, obtain any money, &c., with intent to cheat and defraud.” Under this statute, the offence consists in the false pretence, and it has been universally held and never questioned by any court, “ that in an indictment upon that statute, it is not enough to allege generally, that the cheat was effected by divers false pretences, &c.; hut the particular false pretences must be stated, that the party may know against what he is to defend himself; and that the court may see that there is an indictable offence charged, as there are some pretences which are not within the statute.” [1] I quote the very words of the authorities. (2 Term Rep. 586. East’s Crown Law, 837.) This indictment does not set out ■ the false pretences by which the cheat was ■ to be effected. This "court, then, has not the means of determining whether it was *such a cheat as comes within the statute. We are bound by the record: we cannot look beyond it; and if that does not furnish all the ingredients to constitute a crime, it is impossible for this court to supply them. We cannot see, then, that here there is an object for the conspiracy charged, which, if attained, Would have been criminal under the statute. Nor would the object here charged be criminal at common law; for it is as firmly established as any rule can be, that the false token must be set forth, in an indictment for a cheat at common law. That is not done. There is, therefore, on this indictment, no criminal act charged as the object of the conspiracy. The conspiracy, then, was not criminal by reason of its object, and does not come within the first class. Was it an offence by reason of the unlawful means used, or intended to be used; and therefore within the second class 1
*617 This question we are utterly unable to answer by an inspection of the indictment; for it does not set forth the means; so that this court cannot determine whether they were lawful or unlawful. In the language of the rule before quoted, I ask, is this “ a statement of the facts by which/a crime is constituted ?” The crime is constituted by unlawful means, and no means whatever are specified. Had not authorities been quoted, contrary to this very plain and obvious conclusion, I should leave this question here, to rest upon what appear to me the plainest dictates of common sense. But it is contended, that in this peculiar case of conspiracy, it is sufficient to allege generally that it was to be accomplished by unlawful means, and some cases are cited. I am in possession of a report of the decision of the court of appeals in Maryland, on the conspiracy cases tried in that state in 1823, (1) in which every case that has ever been decided, bearing in the least on the law upon this subject, is minutely stated and examined; and from a comparison of most of them with the original reports, I am persuaded they are correctly ^stated. Out of twenty-one cases there quoted, in nineteen the means by which the conspiracy was to be. effected, are charged. A brief statement of them seems necessary, to show the uniform and almost uninterrupted current of authority on this point. (The cases referred to were here severally quoted and commented on by the learned senator.)
To these may be added the case of the People v. Barrett & Ward, (1 John. Rep. 66,) where the means alleged are, that the defendants passed to O. D. a note of one Medad Gun, and falsely affirmed that Gun was solvent. Against this mass of authority, and a greater and heavier mass, I venture to assert, cannot be produced in favor of any other legal position, there are two cases cited. The first is that *618 of The King v. Eccles, (Leach, 274,) in which the charge was that the defendants conspired, by. wrongful and indirect means, to impoverish Booth, and prevent him from- exercising his trade of a tailor. Lord Mansfield held, that the. offence consisted in “ conspiring to effect the mischief by any means; the means may be perfectly indifferent.” The answer to the applicability of this case, is. given by Lord Ellenborough, in the ease of Turner, (13 East, 228,) who says, “ the case against Eccles and others, was considered a conspiracy in restraint" of trade, and so far a conspiracy to do an unlawful act affecting the public.” This, then, was a case within the first class) where the offence consists in a criminal object, and then, indeed the means are “ perfectly indifferent.” It has no application to the second class, where the offence consists in the means used.
The other case is that of The King v. Gill, & Henry, (2 Barnwell & Alderson, 204.) The indictment was as general as the present. It charged the defendants with conspiring, by divers false pretences and subtle means and. devices, to- obtain the monies of P. D. & G. D.; and it was held sufficient. This was decided in 1818, and is of course no authority here. It is no more than the opinions of respectable lawyers, on the other side of the Atlantic; and derives its whole force from the reasons given in its support. The reason assigned by Ch. J. Abbot is, that there may be a possible case *of conspiracy, when the means of accomplishing it are not agreeed upon by the conspirators ; and therefore there may be cases where those means cannot be set out. Referring again to the great division of conspiracies, it is admitted that there may be a case of conspiracy of the first class, where the object itself is criminal, in which the means of accomplishing it are perfectly indifferent, and need not be agreed upon. But the second class is that where offence depends on the unlawful means, and of course the offence cannot be complete, without those means are used or agreed to be used. The remark of Ch. J. Abbot is true; but it is not applicable to the case. To illustrate the distinction: it is an offence to steal, but it is *619 not an offence to obtain property by a fraud which does not amount to a false token or false pretence. If B. and A. agree to steal, the offence of conspiracy is complete, and the means need not be set forth. If they agree to obtain 20 pounds of flour in a barrel more than they ought to have, by the use of a false weight, then it becomes criminal in consequence of the means agreed on. They might have agreed to obtain it by improper means, but which were not criminal. They of course could commit no offence until the idea of crime, either in the object or by the means, entered their minds; and then the act of agreeing, would be an overt act towards the consummation of the offence; that is, the act of agreeing to those means; and of course there cannot be a possible case of the second class, unless the unlawful means are agreed upon. I have already endeavored to give the reasons which satisfy me that the present is a case of the second class. In order to show more conclusively that the remark of Ch. J. Abbott is not applicable to it,. I again recur to the reason given for the rule of the requisites of an indictment, “ that it must contain a statement of the facts by which the crime is constituted, so as to identify the accusation, lest the grand jury should find a bill for one offence, and the party be put on his trial for another, without any authority.” It seems agreed that the offence consists in the unlawful means; those means then were proved to the grand jury. Suppose they consisted of false entries in the books of the company; upon this indictment, how is the court to know that such *were the means proved, and for which the grand jury said the defendants should be put on their trial 1 or take any other possible case which would justify the finding of a bill; what means have the court to determine whether the public prosecutor proves the same facts on the trial that he proved before the grand jury, or any facts at all like them 1 How can the accusation be identified; that is, ascertained to" be the same that was laid before the grand jury, and is presented for trial ? The indictment says, “ by wrongful and indirect means".” Is this an identification of the accusation 1
*620 There is another reason, equally strong, why the means should be set forth; it is, that the court may judge whether there is an indictable offence charged. This is a sacred right of the citizen, and when deprived of it, he -is deprived of one of the greatest' bulwarks of liberty. In the hurry of business a judge may'mistake as to the lawfulness of the means employed to effect a conspiracy, if it rests only in evidence'; but if they are spread on the record, a writ of error submits them to a- more deliberate judgment.
But perhaps a stronger reason than any other, arises from a consideration of the great injustice which may be perpetrated by means of such indictments. What kind of notice does a defendant receive of the charge against him, by reading an indictment, that says he conspired by indirect and unlawful means to defraud some unknown persons ? For it cannot be denied, that under :this indictment the defendants might'have been convicted of a conspiracy to defraud a man in Kamschatka. How are they to prepare for their defence ? Would not a copy of the decalogue be as useful tó point out the particular offence for which they are to be tried? It would be in vain that they should ransack their memories; for an innocent man would be the least likely to suspect the transaction for which he is to be implicated.
Such a practice violates the fundamental principle of our criminal law, that no man shall be twice tried for the same offence. That principle has no value, unless the accused is" apprised of the charge against him, that he may show a former acquittal. Let us suppose á defendant going to trial on such' an" indictment as the présent. He has already been *tried for a conspiracy and acquitted; until the moment arrives when the" public prosecutor opens his testimony on the trial, the defendant has no means of knowing for what he is to be tried. At' such" a time what means has he of adducing the évidence of the former trial? I cannot believe that our criminal law is chargeable with such gross injustice. It has been framed and matured in wisdom, and in mercy. It exults in the belief that every man is irino *621 cent until proved guilty ; and it glories in affording to the accused every possible means of vindicating his innocence. It scorns the rack and every species of torture; it disdains trick and circumvention, and invites to an open, full and fair investigation of the offence. Such indictments as that now under consideration, are, in my judgment, directly hostile to these great features of our criminal law. They open the way to general and indefinite charges; they surprise the defendant, they afford no means of determining whether they have been legally found, they deprive the accused of the right of reviewing them, and they leave him at the mercy of. a public prosecutor. If there were fifty precedents in England, instead of one solitary case' against nineteen, and that not applicable, I should be prepared to say that the spirit of our institutions was directly at variance with such indictments ; and that they ought not to be sustained in a country which regards every citizen as composing a part of its sovereignty.
The view I have taken upon the question discussed, dis- ’ poses of this case. But there are others which have been presented, and which it would seem a duty briefly to notice.
It is urged that this indictment charges an executed conspiracy ; that the first agreement to commit the offence and every other preliminary and intermediate step, is absorbed .in the actual commission of it. I am deeply impressed with the weight of this objection. I cannot conceive how a crime can be split up into its several parts, and each of those parts made subject of accusation. If aman committed a theft by robbing, I cannot understand how the two can be separated, and the defendant tried for the theft alone. An indictment for murder always charges, that the defendant made an assault *on A. B. and him murdered with malice aforethought. If a general verdict of guilty were, rendered on such an indictment, would it enter into the head of any man to inflict a punishment merely for the assault ? That assault is a part of the crime and is absorbed in it. So in this case, the agreement to cheat, the false tokens or false pretences used, are all concentra *622 ;ted and collected in the offence of cheating. I do not mean to say, that where there are several counts in an indictment, in some of which a conspiracy only is charged, and in others the attainment of -the criminal object is -alleged, the public - prosecutor -should not be-permitted to sustain which count he could by-evidence. In such a case, the verdict would -remove all difficulty; for if the object had not been attained, and-a cheat had not been effected, the jury would acquit the defendants on those-counts, and find them guilty .on-the. counts for the conspiracy only. But -here there .is but one count, which alleges that the cheat was accomplished, arid the jury have found that allegation to be true. In-fact, then,-this indictment is not "for a conspiracy, but for a cheat. This ■ view -receives conclusive authorityfrom the judgment of the supreme court of ■Massachusetts, in-the case of the Commonwealth.u.-Kings-bury and others, '(5 Mass. Rep. 106,) where it is said, “had the conspiracy not been effected it might have been punished as a-distinct offence; but -a contrivance to commit a felony, -and executing the contrivance, cannot be •punished as- an offence distinct from the felony, because the contrivance is part of the felony when committed pursuant to -it. The law-is the sariie respecting misdemeanors. An : intent to commit a misdemeanor, manifested by some overt ■act, is a misdemeanor; but if the intent - be carried into execution, ,the offender can be punished but for one Offence.”
I do not understand-this decision to rest on-the doctrine ■of merger, which exists when • two offences of different -degrees have'been committed at the same instant and in prosecution of the same object; but-it is on the-ground, that -the previous acts are . all absorbed in the offence; for Ch. J. Parsons expressly puts the case of a -conspiracy to -commit a misdemeanor, which is -itself a misdemeanor, and therefore, not *within the technical idea of merger. But cheating by false pretences, is -with us, -an offence of a higher grade than a misdemeanor; (2) for it is punishable by *623 imprisonment in the state prison for three years; while amisdemeanor, in which class conspiracies are included, are punishable only by fine and imprisonment ip the county gaol. The technical doctrine of merger, might, perhaps with propriety, be applied to this case.
The reason, however, on which the doctrine is founded, is equally applicable to the case where the offences are of the same grade. That reason is presumed to be, that if a man were indicted and convicted for a conspiracy to do an unlawful act, and was punished ; if he should afterwards be indicted for doing the act itself, he could not plead the former conviction in bar, because it could not be for the same matter. And thus a citizen might be repeatedly put in jeopardy for the same offence, against a fundamental principle of our criminal law, consecrated and sanctioned by our constitutions.
Considering this, then, as an indictment for a cheat, consummated, we are to enquire whether it is sufficient as such. The authorities before cited from 2 T. Rep. 586, and East’s Crown Law, 837, to which may be added 3 Chitty’s Criminal Law, 99.9, and 2 Str. 1127, abundantly establish that an indictment for cheating, either at common law, or under the statute, must set forth the false tokens, the false pretences, or other means by which the cheat was effected, “ that the party may know,” in the language of the court, “ against wb-<p\ s is to defend himself, and that the court may see there!/ an indictable offence charged; as there are some pretences [and some tokens and various means] which are not within the statute.” This view, if correct, is entirely decisive of the question respecting the sufficiency of this indictment; for it *does not purport or pretend to set out any false tokens, any false pretences, or any particular means by which the cheat was effected. I venture *624 to assert that there is not a case or precedent to be found in the whole course of English or American authorities, which would sustain this indictment as for a cheat. That it is for a cheat has been shown. But whether it be considered as an indictment for a cheat or for a conspiracy, the same objection, and for the very same reasons, applies to it; and it is equally bad as either.
There .is a remaining question which I approach with great diffidence; it is, whether an indictment will lie for a conspiracy to produce a private injury which is not a crime in itself, and does not affect the public, or obstruct public justice 1 It cannot be denied that the courts have, in some instances, sustained such indictments. I have neither time nor ability to examine these cases, and the reasons upon which they are founded. I can only say that those reasons have failed to convince my mind. From the best reflection I have been able to give, I am inclined to think oúr statute and that of 33 Ed. 1, from which it was copied, aré definitions of the offence of conspiracy. It does not say that such and such acts shall constitute conspiracy, which would be adding to the offences of that character already existing; but it says, “ conspirators be they who confeder, &c.and it enumerates several instances of the offence, which were such at the common law; such as falsely to indict another, while it entirely omits others. But for-the construction which the courts have given it, I shoulff think that it was a declaration of the intention of the legislature, that certain things should be conspiracies, and all others which had been so considered, should no longer be punished as such, upon the great principle that the enumeration of several particulars is an exclusion of all others not specified. But it is involved in great difficulty, which probably can be removed only by legislative authority. If it were important to the decision of the cause, I would endeavour to make up an opinion satisfactory to myself; but- as, in my opinion, the judgment should be reversed for other reasons, I abstain from a further consideration of this point. Mr. Chitty, in the preliminary note to his title conspiracy, after *showing the contradictions betw'een the cases says, “We can rest therefore *625 only on the individual cases decided, which depend in general on particular circumstances, and which are not to be extended. If this be true, and I believe it is, that no general rule defining the offence of conspiracy exists in the law, it presents a lamentable exception from the principles of ofir whole system. If the offence is to be declared after the fact, and cannot be ascertained before it, we may apply to ourselves the maxim, that miserable is the condition of a people where the law is so vague and uncertain as to rest only in the breast of the judge. I am unwilling to sanction any such principles. If it be consistent with the public feeling in England that judges should possess an indefinite power of extending a principle of criminal law to cases after the fact, so as to prevent what they may suppose a failure of justice, it is yet contrary to the first principles of our government, and subversive of the great object of our institutions—the security of personal liberty and property. It would be infinitely better that culprits should escape, than that any innocent man in community should be endangered. But ample provision has been made by the legislature for all cases of fraud and embezzlement; and little is hazarded by the assertion that no offence of that description can possibly be committed without violating some existing statute. There is no need, therefore, of stretching the powers, or enforcing the discretion of courts to,prevent a failure of justice.
If, in addition to the uncertain and fluctuating condition of the criminal law in this respect, it should also be settled that the form of the accusation may be so general, vague and indefinite as not to apprise the accused of the specific offence he is . charged with, then will be completed an instrument of tyranny and oppression worthy of a star chamber or an inquisition.
I am of opinion that the judgment of the supreme court should be reversed.
Jones, Chancellor, also delivered his opinion at large in. favor of a reversal, on substantially the same grounds taken by Spencer, Senator; and the chancellor was- particular.' *626 in urging the first ground taken by Spencer, Senator, viz, that the means agreed on by the alleged conspirators were not set forth, which he held was necessary, inasmuch as the fraud averred in the indictment to have been the object of the conspiracy did not appear by the indictment to be a legal crime.
Stebbins, Senator.
The defendant below has been convicted of a conspiracy, wrongfully, injuriously, and unjustly, by wrongful and indirect means, to cheat and defraud the Sun Fire Insurance Company and divers other persons to the jurors unknown, of their goods, chattels and effects ; and the indictment avers that the conspirators, by certain undue, indirect and unlawful means, did cheat and defraud the said company and other persons unknown, of divers promissory notes, bonds and mortgages.
The principal questions arising upon the record, appear to be, first, whether such a conspiracy is an indictable offence 1 second, whether the offence is sufficiently stated in the indictment; and third, whether the conspiracy is not merged or absorbed in the cheat which the indictment alleges was effected ?
It has, however, been urged, that as choses in action were not the subject of larceny at common law, they cannot form the subject of an indictable conspiracy ; but 1 apprehend, if it is not too late to say at this day that there is no property in choses in action, it is certainly too much to say that a person cannot be defrauded of his notes or bonds. He may be deeply injured in a variety of ways, by being deprived of that which possesses little or no intrinsic value. But there is substantial value in a bond or note. They form the subject of an action of detinue or trover ; and a mere chose in action is frequently regarded as money for the purposes of tender or levy.
Many other formal objections have been taken to the record, of which it is sufficient to say, none appear to be well founded.
First, then, is the conspiracy charged in this indictment an indictable offence ? It is said not to be, for the reason *627 that *its object was a mere private fraud; and the argument is, that the policy of the law :<s to prevent crime, and that either the object of the conspiracy must be the commission of an indictable offence, or the means by which it is to be effected must be of the same character, to render it indictable. The point submitted to the court, however, does not assume precisely that ground. It is, that a conspiracy to defraud an individual of his property is not indictable at common law, unless it is to be accomplished by criminal means > and indictable conspiracies are classed in four classes: 1. To commit crime; 2. To do an act prejudicial to the public, as a conspiracy among journeymen to raise their wages ; 4. To prevent justice in a judicial tribunal; and 4. To charge one with crime.
It is obvious from this classification, that conspiracies may be indictable where neither the object, if effected, nor the means made use of to effect it, would be indictable without the conspiracy. Charging a person” with a crime is not an indictable offence; but only subjects the wrong doer to an action of slander. Injuring his reputation by charges less than criminal, does not even subject him to an action of slander. Yet by the point it is admitted, and the cases are abundant to show, that a conspiracy to slander a man by charging him with a crime, or with being the father of a bastard child, is an indictable offence. (1 Sid. 68, Child v. North, 1 Keb. 203, id. 254. 1 Ventr. 304. Rex v. Kinnersley & Moore, 1 Str. 193. Regina v. Best, 2 Ld. Raym. 1168. Rex v. Parsons, 1 Wm. Bl. 392.) It is worthy of remark, that these are among the earliest cases of conspiracy to be found in the books; and it appears to me they furnish an unanswerable objection to the proposition, that a conspiracy, to be indictable, must have crime for its object, or must depend for its accomplishment upon criminal means.
In the case of conspiracies among journeymen to raise their wages, (Rex v. Tailors of Cambridge, 8 Mod. 11,) the object of the conspiracy is lawful, and the means by which the object is to be effected are no otherwise unlawful, than as the conspiracy makes them so. So . *628 case of conspiracy among officers of the East India Company to ^resign, (Vertue v. Clive, 4 Burr. 2472,) it is the conspiracy which constitutes the offence. The object to jje effected, and the means by which it is to be effected, would b¿ otherwise lawful.
Still, however,- every conspiracy is not indictable ; and Mr. Chitty very justly remarks, that it is impossible to conceive a combination, as such to be illegal. It is the object intended to be effected, or the means by which the object is to be executed, that renders it an Offence; and the difficulty lies in defining with precision what objects, or what means of effecting the object, give a criminal character to the combination. An Unlawful assembling of persons to do an unlawful act is. an -indictable offence, notwithstanding the act be not. done, or be not indictable if done. It is an offence strongly analogous to that of conspiracy. The policy of the law, in' both cases is, to prevent mischief by punishing as a crime the attempt to commit a wrongful act; and I can see no reason why an attempt by a number to do a wrongful act, may not be punished as a higher offence than the mere doing of the act by a single individual. The object is to prevent the mischief. To do so, it is necessary to guard against the combined skill and power of a dangerous confederacy, and the remedy ought to be proportioned to the Occasion.
' Combinations against individuals are dangerous in themselves, and prejudicial to the public interest; and it is upon this principle that the doctrine of maintenance is founded. It is no wrong for an individual to prosecute his rights against another in a court of justice; but it is, notwithstanding, criminal- for others to maintain him in his suit; and for the reason that such maintenance tends to oppression ; that the weak would be endangered by combinations of the powerful and wealthy. Chief Justice Parsons illustrates the doctrine of conspiracy with much point in one of his opinions. He Says a solitary offender may be easily detected and punished; but combinations against law'are" always dangerous to the public peace, and to private security. To guard against the union of numbers *629 to effect an unlawful design is not easy, and to detect and punish them is often difficult. The unlawful confederacy is therefore punished, to prevent the doing of any act in execution of it.
*If, then, crime does not necessarily form the object or means of executing a conspiracy, to render it indictable, it becomes necessary to inquire more minutely, whether such a conspiracy as that charged in this indictment is a public offence. It is said by Hawkins, (B. 1, ch. 72,) that all confederacies wrongfully to prejudice another, are highly criminal in common law; and the same doctrine is laid down in 3 Chitty’s C. L. 1139, 2 Russell, 1800, Archbold’s Cr. PI. 390, and Christian’s note to 4 Bl. Com. 136 ; all elementary writers of approved authority. The definition of the offence given by these authors, is a confederacy to do an unlawful act, or a lawful act for unlawful purposes, or by unlawful means; and this is said to be the true one by Ch. J. Parsons, in Com. v. Judd. (2 Mass. R. 329.) All these authors admit that a combination, wrongfully to injure individuals, may be indictable ; but Mr. Chitty remarks, that the point at which such a conspiracy becomes criminal does not seem to be precisely defined. It is, in its nature, difficult to define. The offence itself is one which, with some propriety, may be said to consist in an artful contrivance and combination to produce the injuries consequent upon other crimes, in a manner calculated to elude the provisions and restraints of criminal law, The forms in which it appears are as various as the ingenuity of man is unbounded.
But it is contended, upon the authority of the adjudged cases, either that these writers are mistaken in saying that conspiracies to defraud individuals are indictable,- or that, when they speak of an unlawful or wrongful act as the obiect of the conspiracy, they mean an act of, itself indictable. The distinction between an unlawful and a criminal act, however, must be very obvious to any person of much less discrimination than either of those writers; and I should not readily suspect them of losing sight of the distinction: But the distinction is an important one in its bearing upon this case; and an examination of the cases becomes neces *630 sary to determine whether the definition of the elementary writers is correct in this respect. It is contended for the defendant that all the cases maybe properly classed among the four classes before mentioned; and, as a consequence, that a conspiracy to defraud *an individual is not an offence unless it is to be accomplished by criminal means. As I read the cases, they are not susceptible of such a classification ; and many of them are mere private frauds, effected in pursuance of a conspiracy, and for that reason held to be indictable as conspiracies. East, in his “ Pleas of the Crown,” (ch. 18, sec. 5,) remarks, that there are instances to be found in the books of cheats, in their nature private, which have yet been adjudged to be indictable at common law; but, upon examination, they will either appear to be founded in conspiracy or forgery. Thus (he proceeds) “ it is said by Hawkins, that the suppression of a will is indictable as a cheat; for which he cites Noy, 103. What the form of the count was in that case, does not appear by the report; but as there were several persons convicted, it is probable they were charged with a conspiracy or combination.” Here is certainly the opinion of East, that a private fraud, coupled with a conspiracy, constitutes an indictable offence, and his comments upon the case in Noy, appears to me to be the only one of which the case is sus ceptible. The suppression of the will was a mere private fraud.
In the case of Child v. North, (1 Keble, 254,) the indict ment being for a conspiracy to charge H. with fornication, a motion was made in arrest of judgment; but the court denied the motion, on the ground that it was likely to be a charge and loss to H.; and Foster, Justice, said, if the conspiracy be to do an unlawful act, the very conspiracy is a crime, and so the court agreed.
The King v. Cope, (1 Str. 144,) was a conspiracy to injure the trade of a card maker, by bribing his servants to mix grease with the paste used in the manufacture of the article; and held to be indictable. The case mentions that it was the king’s card maker; and this circumstance, it is contended, renders the offence a public one. The case *631 does not define the distinction between the king’s card-maker, and the king’s subjects generally. If there is any distinction, I should apprehend it does not arise from any interest which the crown had in the manufacture of cards, more than in any other branch of industry.- The article itself would not seem *to be one which would be under the special care of the government, or which should need any oeculiar guarantee of good quality. By the title given, I understand nothing more than a mechanic who occasionally, or perhaps usually, supplied his majesty with articles of this manufacture ; and the good sense of the case appears to me to be, that a conspiracy to injure the trade of a mechanic by fraudulent means is an indictable offence.
The King v. Eccles (1 Leach, 274,) was a case of conspiracy to prevent an individual from exercising the trade of a tailor in a particular place, which was held indictable. It is said to have been a crime for the reason, that the conspiracy was to restrain trade, and therefore an offence against the public ; and such is the comment of Lord Ellen-borough, in 13 East, 228; but with great deference, I should doubt whether it was not the private injury to the individual, which operated upon the mind of the court. The interest of the public was, such as they have in the prosperity of every individual occupation, remote and trifling.
The King v. Robinson, (1 Leach, 47,) was a conspiracy to marry a person who personated a Mr. Holland. The female was Mr. Holland’s housekeeper, who procured the other defendant to marry her, calling himself Mr. Holland, and being clothed from his wardrobe. The object of the conspiracy was to set up a fictitious claim to the estate of Mr. Holland. It appears to me to be a strong case of conspiracy to defraud an individual; and to have been decided as such. A different reason is however assigned; that the conspiracy tended to the perversion of justice, and contemplated an abuse of the courts of justice, in attempting to establish the claim. Surely it does not necessarily follow, that the claim would be litigated; and I can conceive of no conspiracy, which may not, under some circumstances, *632 give rise to a litigation. Might not the bonds and notes of the Sun Fire, Insurance Company ?
The King v. Delaval, (3 Burr. 1434,) was a conspiracy to procure a female to be bound to one of the defendants, for the purpose of facilitating her prostitution. Although grossly ^immoral, it was, nevertheless, not a criminal act, if done by an individual, or one by which the public can be said to be chiefly injured. It is not an offence punishable by the common law; and Mr. Christian remarks, in-his note to 3 Bk Com. 142, “ it appears tobe a remarkable omission in the law of England.”
The Queen v. Orbell, (6 Mod. 42,) was a conspiracy fraudulently to cheat I. S. of his money, by getting him to lay money on a foot race, and prevailing on'the party to run booty. The court said, being a cheat, though it was private in the particular, it was public, in its consequences.
In The King v. Gill & Henry, (3 Barn. &. Ald. 204,) the1 indictment charged that the defendants conspired, by divers false pretences and subtle means, to obtain the monies of two individuals. It was objected, as in this case, that the means by which the object of the conspiracy was to be executed, were not spread upon the record. The objection, however, was overruled by the court, who say, “ It is not necessary to state the means at all in the indictment, it being quite sufficient to charge' the illegal conspiracy, which is of itself an indictable offence.
This case is attempted to be classed among conspiracies to commit crime; but it will be remarked, that the indictment is almost precisely similar to that now before the court. One does not set out the false pretences, which would be necessary in an indictment for obtaining money by false pretences, and the other does not set out the deceptions necessary in an indictment for a cheat. Each states the object of the conspiracy; but neither the means of its accomplishment. I regard it as a parallel case upon both points.
The case of The King v. Roberts, (1 Campbell, 399,) was a conspiracy by persons to pass themselves off as men *633 of fortune, and thereby to defraud certain tradesmen; and it was held to be an indictable offence.
The Com. v. Judd, (2 Mass. Rep. 329,) was a case of conspiiacy to manufacture abase article resembling indjgo, for the purpose of sale at auction as indigo. The defendants were found guilty of the manufacture, but not of the sale, and were convicted of the conspiracy. Chief Justice Parsons, #in giving the opinion of the court, remarks, “ It is sufficient that the conspiracy was made with the intent of acquiring the monies, goods and chattels of the citizens of this commonwealth, by fraudulent and dishonest means.” The object was to defraud whoever might become purchasers at the auction; and it. is contended that, therefore, it was a fraud upon the public. It was undoubtedly a fraud, which, if executed, would have defrauded that part of the public who should become purchasers ; and in that respect bears a strong analogy to a fraud upon a public institution, which affects not only those who may be owners or purchasers of its stock; but also others whose contracts of indemnity depend upon its solvency. Such a case, I think, does not suffer by a comparison in this respect with the case in Massachusetts.
A very similar case is found in 3 Serg. & Rawle’s Pennsylvania Reports, 220, (Com. v. Colins.) It was a conspiracy to circulate spurious notes of the similitude of bank notes, and held indictable.
But the strongest case, and the one most analogous to the present upon this point, is The State of Maryland v. Buchanan and others. The indictment charged that the defendants, being officers of the U. S. . Branch Bank, conspired to use, and did use a large amount of the funds of that bank, for the space of two months, without paying interest for them. The case came up on demurrer to the indictment; was most ably and elaborately discussed by the court; all the authorities on both sides were minutely examined every question which had been raised in this case was agitated in that; and two of ,the judges were in favor of the demurrer, and one against it. In the court of appeals the cause underwent a second discussion; and the judg *634 ment was reversed by the unanimous opinion of that court, and the defendants ordered to plead over to the indictment. (5 Harris & Johnson’s Rep. 317 to 368.) If the decision of a superior court of a sister state, is in any case entitled to consideration here, this case, from its importance, from the depth of research which it produced, and from the very great ability with which it is decided, is in my judgment, entitled to the highest consideration. *The more so for the reason that the court no where, in their opinion, refer to any interest which the public, in their aggregate capacity, have in the United States Bank; but place their decision upon the same grounds as if the bank had been wholly owned by individuals.
Upon this point, then, we have the opinion of the courts of Maryland, Pennsylvania and Massachusetts, the opinion of the elementary writers, Hawkins, Chitty, Russell, Archbold, East and Christian, and a current of decisions of the English courts, all going to show, in my estimation, that such a conspiracy as that charged in the indictment before us, is an indictable offence. The whole furnishes a mass of authority altogether irresistible. But to this 1 think we may add the whole class of cases of conspiracy to defame the character of an individual. It is the individual in those cases who is defrauded of his reputation; and I perceive no difference, so far as the public is concerned, between depriving an individual of his property and of his reputation, by means of a conspiracy: and to say that those conspiracies are public offences, because such defamation may give rise to judicial investigation, is to my mind too great a refinement. If this class of cases wrs limited to conspiracies falsely to indict an individual, there would be some reason in it; but it is not so. A conspiracy to slander constitutes the offence. And in the King v. Rispal, (3 Burr. 1320,) it was objected that the charge of taking hair out of a bag was not criminal; but the court say the gist of the offence is the unlawful conspiracy to injure the man by this false charge; not that :t has a tendency to pervert the administration of justice.
An examination of the cases cited, convinces me that a *635 conspiracy may be defined (so far as it is capable of a precise definition) as a confederacy to do an unlawful act, or a lawful act by unlawful means, whether to the prejudice of an individual of the public; and that it is not necessary, to render the conspiracy indictable, that its object should be the commission of a crime.
This doctrine is impliedly admitted by the case of The People v. Olcott, (2 John. Cas. 311.) It was a conspiracy to defraud a bank of its money. The jury found the agreement *to obtain the money from the bank, but with an intent to return it. Kent, J., who gave the opinion of the court, does not intimate that a conspiracy to defraud a bank of its money, is not an indictable offence; but very properly puts the decision of the court on the ground that the jury did not find an agreement to procure the money with a fi audulent intent. This, he says, is no answer to the substance of the charge, which was the unlawful and fraudulent intent to procure money from the bank.
Still, however, as before remarked, it would probably be too much to say that every conspiracy to defraud an individual, or to do so by an unlawful act, is indictable. The King v. Turner, (13 East, 228,) was a conspiracy to commit a trespass by going armed in the night into the premises of an individual for the purpose of snaring hares. It was held not indictable; and Lord Ellenborough remarked that all the cases in conspiracy proceed upon the ground that the object of the combination is to be effected by some falsity; and he refers to a case of conspiracy to indict falsely. If he had said fraud or falsity, I apprehend it would have been more conformable to the cases referred to. There was in this case neither fraud, falsity nor deceit; and perhaps one of these may be essential when the object of the conspiracy is not criminal in itself.
The King v. Pywell (1 Starkie’s Rep. 402,) is another case relied upon to show that a conspiracy to commit a private fraud is not an indictable offence. Pywell advertised a horse for sale, and undertook to warrant it. McLean, the purchaser, applied at the stable, and was told by the other defendant, (Pywell not being there) that he knew the horse *636 to be sound ; and had known him a long time, and would warrant him in behalf of Pywell; upon which McLean purchased. Lord Ellgnborough intimated that the case did not assume the shape of a conspiracy; and that the evidence would not warrant any proceeding beyond a civil action for the damages. This is the whole case as it appeared at nisi priy,s. There was no conspiracy proved, nor any facts from which it could be inferred. There is not even such a deceit shown as would have sustained a claim for damages on that ^ground. The case is put by the court on the ground of want of proof, and not on the ground that a conspiracy to commit a private fraud is not an offence; and it appears to me to have no bearing on the question. If the law is that such a conspiracy is not indictable, it seems a little remarkable, that among the multitude of cases upon the subject, there should be found none more applicable to the point than the two above mentioned ; for certainly the last proves nothing on the subject ; and the most which the first case establishes is that there may be exceptions to the general rule.
But it is not necessary to the decision of this cause to go so far as to say that every combination to defraud an individual is indictable. The victim of the fraud, in this case, is an incorporated public institution, chartered for the purpose of affording indemnity to the public against the hazards of fire; located in the commercial metropolis of the continent; its stock probably in the hands of a large number of individuals ; and a still larger number, probably, depending upon it for indemnity against losses. Although, for most purposes, such an institution is to be regarded as an individual, yet cannot the court judicially perceive and recognize an interest, which the public in fact have in such an institution, certainly as important as any they have had in any of the cases cited ?
We may indeed judicially determine that the public have no interest in such conspiracies; but I apprehend it will be difficult for us to convince the public that they have not felt their consequences, It is a crime to conspire to give a false value to public stocks. (3 Maule & Selw, 68.) It *637 is not equally so to combine to destroy the value cf a stock which .is a subject of daily sale in the stock market ? And are not the interests of trade as seriously affected as they possibly could have been by the sale of a spurious article of merchandise‘at auction? The purchaser in either case is unknown, and is without the means of guarding against the deception.
The effect of this doctrine of punishing conspiracies to commit private frauds, as offences against the public, has been strenuously urged in the argument as almost entirely prostrating the jurisdiction of the court' of chancery in cases of fraud.. It would become us to pause before we should *adopt any principles that might- either destroy or cripple a jurisdiction so infinitely important and essentially necessary as* is that of our courts of equity in cases of fraud. But however sincere may be the apprehensions entertained upon this subject, I can perceive no grounds for extraordinary alarm; and cannot persuade myself but that those courts will continue to exercise their accustomed jurisdiction in relieving against frauds, unshorn of any of their legitimate powers, notwithstanding the recognition of the doctrine of conspiracy.
The rule of that court, it is true, is, that a defendant is not bound to answer to facts which may criminate or subject him to a penalty. ‘ (4 John. Ch. Rep. 432.) It is the same protection which the law affords to witnesses in other courts. But the court is not thereby ousted of its -jurisdiction. Because a defendant is not bound to answer as to Certain facts, the plaintiff is not precluded from proving those facts by witnesses, nor is the court precluded from administering the proper relief when the facts are shown. The settled law of that court has always been, that a demurrer to the discovery sought is no answer to that part of the bill which prays relief (3 John. Ch. Rep. 471. 5 id. 186.) The amount of the objection, then, is this: if conspiracies to commit private frauds are criminal, a defendant in equity is not bound to confess such crime. The plaintiff must prove'his case by other means than the defendant’s confession ; and then the court stands ready to relieve him. Surely *638 there is no great cause of alarm in this doctrine. It is sitn ply putting the plaintiff upon proof of his cause in that court, in the same manner as he is bound to prove it in every other court.
The next question is, whether the offence is sufficiently ■ set out in the indictment.
An indictment is said to be a narrative of an offence. (2 Hale’s P. C. 169.) And the general rule of pleading in criminal cases is, that such facts must be stated upon the record as, in judgment of law, are sufficient to constitute the offence.
If, then, this offence consists in combining to do an unlawful act, or a lawful act by unlawful means, it will clearly only be necessary in the first case to charge the combination #and the object of it, that the court may see it was a conspiracy to do an unlawful act; but where the combination is not rendered criminal by the unlawfulness of its object, it will be necessary to go farther until the point of criminality is reached, and set out such unlawful means as rendered it so.
The combination and the object of it must always be set out, because a mere combination is no crime ; but coupled with an illegal object it becomes so. When neither the conspiracy nor the object intended to be affected by it are unlawful, but the means intended to be used in executing that object are illegal, then it becomes necessary to set out those means as a constituent part of the offence.
Take for instance, the case of The King v. De Berenger. The object of the conspiracy was to raise the price of the stocks, which the court say is not in itself unlawful; but the means by which that object was to be executed were so. The means were circulating false and deceptive reports. The circulation of these false reports formed part of the agreement or combination, and rendered it criminal. Lord Ellenborough, in that case, says, “the crime lies in the act of conspiracy, and would have been complete although it had not been pursued to its consequences.” Le Blanc, Justice, remarks, that “ the offence is not in raising the funds simply; but in conspiring by false rumours to raise *639 them.” In The Queen v. Best, it was objected that nothing came of the conspiracy, and that the bare conspiracy is not indictable unless something be done. The court overrule the objection, and say the conspiracy is the gist of the offence. So in The King v. Rispal, the court say the conspiracy is the gist of the offence. In The King v. Eccles, Buller, J. said the means were matter of evidence to prove the charge, and not the crime itself. It is therefore not necessary to state the means at all in the indictment, it being quite sufficient to charge the defendants with the illegal conspiracy, which is of itself an indictable offence. Lord Mansfield remarked, “ The conspiracy is stated, and its object. It is not necessary that the means should be stated.” In The King v. Gill and Henry, all the judges agree that the conspiracy is the gist of the offence; and that the offence is complete although no means *may be agreed upon or made use of. The King v. Kinnersley & Moore is also an authority to show that the offence is complete though no act be done in pursuance of the conspiracy. So also in The Brewer’s case, (1 Levinz, 125.) Ch. J, Parsons takes the same ground in The Com. v. Judd. He says the gist of the offence is the unlawful confederacy. The offence is complete when the confederacy is made; and any act done in pursuance of it, is no constituent part of the offence, but merely an aggravation of it.
These references, added to the authority of the elementary writers, Chitty, Russell, See. are quite sufficient, in my judgment, to establish the proposition, that the offence consists in the act of combining unlawfully; that where the object is unlawful, the offence is complete, whether the means of execution be agreed upon or not; that it is not requisite that those means should form any part of the agreement, unless the agreement is thereby rendered unlawful; and in either case, that the offence is complete, whether any act be done in pursuance of the confederacy or not.
If, then, a confederacy to do an unlawful act is criminal, although no means of execution be agreed upon, it follows that, in an indictment for such an offence, where the means *640 were agreed upon, it would be unnecessary to state them, because they form no' part of the offence. It is complete without them. In the one case the means could not be set out; in the other it would as certainly be unnecessary.
Again, if the offence be complete, though no act is done in pursuance of the conspiracy, where can be the necessity of stating the means intended to be made use of, provided the conspiracy otherwise appears to be unlawful ?
Starlrie’s Treat, on Cr. L. 170, is, however, relied upon, ' to show that unless the object of the combination is criminal, the means must be set out. He says, in the beginning of his chapter on conspiracies, that the general averment that the' defendants did conspire, &c., to accomplish an object apparently criminal, is sufficient without showing in what manner Cr by what means, &c.; and on the next page he remarks, “But unless the object be criminal, it seems to be necessary to show an intention to accomplish it by some improper *means.” Now by the terms -apparently criminal, I should understand something not necessarily criminal; and in the subsequent sentence, he evidently refers to the apparently criminal object before spoken of. Standing by itself however, the last proposition is evidently a loose one; for it admits that where the object is not criminal, the use of means which he characterises as improper simply may render the conspiracy an offence. On the whole, I do not see that he differs essentially from the other writers.
My view of the case, if correct, results in this: The object of the conspiracy charged being to defraud the Sun Fire Ins. Co. and other persons, of certain notes, bonds, &c., is apparently upon the record an illegal object; and whether the nature of the fraud contemplated, or its effect, upon the public be considered, presents at least as strong a case as most of those which have been held to be indictable both in England and in this country ; and therefore renders the conspiracy criminal.
The conspiracy itself being criminal by reason of the illegality of its object, the means by which it was to be put in execution become immaterial, and are not necessary to be set out out in the indictment.
*641 The case, however, has been presented in another point r„ view, in which I shall proceed to examine it as briefly ae possible. This view of it proceeds upon the assumption that either the object of a combination, or the means by which it is to be accomplished, must be criminal, or such as, if executed by an individual, would be indictable, to render sucha combination an indictable offence. Without attempting to combat this proposition further than has already been done, but assuming it to be true, the question then is, whether the indictment in this case sets out the object of this conspiracy sufficiently to show to the court that it was criminal. It charges that the defendants conspired, by wrongful and indirect means, to cheat and defraud the insurance company and others. To cheat, in the legal acceptation of the term, certainly means the commission of an indictable offence; but it is contended that the term, in ordinary acceptation, includes as well those frauds which are not criminal as those which are; *and therefore that the particular means by which the cheat was to be effected should have been set out, to enable the court to judge whether the means of fraud were such as rendered it a technical cheat. In an indictment for the cheat, it certainly would be necessary to set forth the means by which it was effected; but it appears to me that when it becomes necessary, in an indictment for one offence, to name another, and it is done by its technical name, the term must be taken according to its legal import. The term is here used collaterally, and as descriptive of an offence which the pleader is not not undertaking to set out; but which it becomes necessary to name, and which is well known in law by that name. The term so used, must necessarily import the offence, without setting forth the particulars which in judgment of law constitute it. '
This indictment, then, charges a conspiracy to defraud1 and cheat; or in other words, a conspiracy to defraud by such means as amount in law to a cheat.
But it would seem that it is not always necessary to specify all the means by which a crime is to be perpetrated, even in an indictment for the offence itself. In treason, *642 Chitty says, (2 Chitty’s Cr. Law, 65,) “ the laying that A. and B. met and proposed the means how to effect the king’s death .is sufficient, without alleging the particular means upon which they agreed, which is matter of evidence. So of subornation of perjury, he remarks, (id. 318,) “ It is not necessary to set forth the means used by the defendant to effect his design; but it is sufficient to stat that he, by sinister and unlawful labors and means, procured the commission of the perjury.” And such is the form of the indictment for endeavoring to suborn, (id. 482.)
There is a little different view of this point, which may tend, at least to strengthen the view just taken. East, in his Pleas of the Crown, (ch. 18, sec. 1,) gives what I esteem one of the best definitions of a cheat to be found in any of the works upon criminal law. He says, it is not every species of fraud which is the subject matter of a criminal charge at common law. It must be such as affects the public, such *as is public in its nature, calculated to defraud numbers, to deceive the people in general. In 2 Russell, 1380, we have a similar definition. The King v. Wheatly was an indictment for a cheat in selling 16 for 18 gallons of liquor. Lord Mansfield, in his opinion, says the offence that is indictable must be such an one as affects the public; as if a man uses false weights and measures, and sells by them to all or many of his customers. So if a man defrauds another under false tokens; for these are deceptions that common prudence cannot guard against. So if there be-a conspiracy to cheat; for ordinary care is no guard against this. Those cases are much more than mere private injuries. But here are no false weights ; no false tokens ; no conspiracy. Denison, J., also says, here are no false weights nor measures, nor any false token at all, nor any conspiracy. If there be false tokens, or a conspiracy, it is another thing. Wilmot, J., remarks with great point, that the true-distinction in all cases of this kind, and which will solve them all, is this : that in such impositions or deceits which common prudence may guard persons against the offence is not indictable; but where false weights and measures are used, or false tokens pro *643 diiced, or such methods taken to cheat and deceive as people cannot, by any ordinary care or prudence, be guarded against, then it is an offence indictable. Now the bearing which these authorities have upon the point is twofold ; first, it is not necessary that a fraud should affect the public in its aggregate capacity to render it indictable as a cheat; but if it affect a number of. individuals, or a particular class of individuals, as was said by the court in The King v. De Berenger, or even one, by means calculated to deceive many, it is an indictable offence. What number of persons to be defrauded, then, renders the fraud indictable ? Are there a sufficient number named in the indictment in this cause 1 Is there not a particular class of individuals (to wit, the stockholders, &c.) injured by defrauding this insurance company ?
But again : the doctrine of Wheatly’s ease seems to be, that a cheat effected by means of a conspiracy, is equivalent to one effected by means of false tokens ; that the combination takes the place of the false tokens, and is of itself to he ^regarded as a false token, or one of the methods taken to cheat, against which ordinary care is no guard. If the combination alleged is to be regarded in this point of view, then we have a technical cheat' set out upon the record, with all its attributes.
This view of the question, however, though submitted with some confidence, is not assumed as conclusive; but as suggested by Wheatly’s case, and bearing upon the point which to me appears to be otherwise fully established. That case, at all events, is properly introduced, as illustrative of the nature of conspiracies.
Aside, however, from any reasoning upon this subject, the authorities to my mind appear to be controlling.
In the King v. Eccles, it was objected that the means by which the conspiracy was to be executed, were not disclosed in the indictment; but the court held the indictment good notwithstanding. The indictment in The King v. Gill & Henry, was almost a literal copy of the one now before the court. It charged that the defendants conspired, bv divers false pretences and subtle means, to obtain *644 monies from two individuals. This charge, although clearly insufficient to sustain an indictment for obtaining money by false pretences, was held sufficiently particular in an indictment for the conspiracy. This case, therefore, is a direct authority to the point.
The ease of Maryland v. Buchanan, (5 Har. & John. 317,) has been relied upon to show that the means ought to be set out in the indictment. They weré so set out in that indictment; but the case is far from being authority for saying that when the object of the conspiracy is to com mit an indictable offence, the means must necessarily be stated in the indictment. The use intended to be made of the case, in this respect, is, I presume, to show that where the object of the conspiracy is unlawful, though not criminal, the means must be stated, that they may appear to have been criminal.
In my view of that case, it differs essentially from the one now before the court in this particular. The indictment there is, that certain officers of the bank conspired to use, *and did use a large sum of money, belonging to the bank, for the space of two months, without paying any interest for the same, and without securing the repayment thereof. There is certainly nothing criminal in obtaining the use of money without interest, and I can discover nothing illegal in it. The law does not give interest for the use of money; but refuses to give it in all cases where there is no contract to pay it existing between the parties. It will, it is.true, as in other cases, raise an implied promise to pay it under certain circumstances; but the claim always rests upon the ground of contract. The gravamen, then, is in not contracting to pay interest. The means by which the use of this money was to be obtained, were the making of false and fraudulent entries and statements in the books of the bank, calculated to show that the money was loaned on sufficient security in stock.
The means were therefore fraudulent and unlawful; and VJ it became necessary to set them out in the indictment, to give a character to the conspiracy, otherwise not unlawful.Here, too, I discover nothing criminal or indictable in the *645 means made use of, except as connected with the conspiracy. The defendants were officers of the bank, intrusted with its funds and boóks, and were guilty of a gross and fraudulent breach of that trust; but were not indictable, unless on the ground that the fraud was such as to. affect the public. (East’s P. C. title Cheats, chap. 18, s. 1.) And if the fraud was indictable, as affecting the public, most certainly a conspiracy to defraud such an institution, is indictable on the same ground.
This case, therefore, appears to me to be one of the strongest authorities to show that a conspiracy to do an act neither criminal nor unlawful, but to be executed by unlawful and fraudulent means, (though not criminal,) and prejudicial to an incorporated public institution, is an indictable offence; such unlawful means being set out in the indictment; but by no means an authority to prove that in charging a conspiracy to commit an offence of itself indictable, it is necessary to aver the means of execution. That it is an authority directly the reverse, I quote the language of the two judges of the inferior court, who were the only judges in either court against *the prosecution. (3) They say, “ If two men should agree, in so many words, to cheat another of his money, they conspire to do a criminal act; because the law would presume that they did not mean to stop short of the means necessary to effect a cheat; and the particular false tokens need not be set out; because the conspiracy is the gist, and nothing need be done in execution of it. But if A. & B. agree to get the money of C., the law would not instanter infer that they intended a cheat, because it might be their object to obtain it on loan; and although they might know themselves to be insolvent, yet the law, for the purpose of converting the private fraud into an indictable cheat, would not suffer the conspiracy to be substituted for a privy false token. So if two conspire to commit. a burglary, the offence is complete, and the particular means need not be set out, although it might depend upon them whether it was a bur *646 glary or a larceny.” And that, they say, was all the court decided in The King v. Gill & Henry, which was a conspiracy to commit an offence which, if individually committed, would be indictable.
Here, then, is the" opinion of the court in Maryland adopting the case of Gill & Henry, and sanctioning an indictment in the very words of the one now before the court. The very argument made in this cause, is here met distinctly. It is that the indictment does not charge a conspiracy to cheat, because the means necessary to constitute a cheat are not set out. The court say, as was said in the case of Gill v. Henry, Where there is a conspiracy to commit a cheat, a burglary, or a larceny, the means need not be set out, although it depends upon them whether the act be a cheat, á burglary, or á larceny. The terms themselves are descriptive of the offence, and necessarily include the requisite means to constitute it.
The case of the People v. Barret & Ward, (1 John. 66,) is the last one I shall notice on this branch of the case. It has been relied upon with great confidence, as establishing *a doctrine different from that which the other cases appear to me to warrant. The defendants were indicted for á conspiracy to cheat O. D. of his money, goods and chattels, under certain false and "deceitful pretences, particularly setting them out, and among the rest, a false representation that the maker of a note passed by the defendants to 0. D. was solvent and able to pay the note. This false representation was set out without a yénue. The defendants were convicted, and the judgment having been arrested, they were again indicted for the same offence, and pleaded the former acquittal in bar. It was contended, among other things, that the first indictment was defective in substance, so that the defendants never were in jeopardy on account of it. Kent, Ch. J. and Spencer and Thompson, Js., were of the opinion. that the first indictment was defective, in not showing a venue to the false representation ; and therefore, that the defendants were entitled to. an acquittal on the second indictment, Tompkins and Livingston, Justices, were against the acquittal. The *647 strength of this authority consists in this, that unless it was material and necessary to have set out the false pretences and representations in the indictment, the want of a venue to such representation could not have vitiated it. That the case is on authority of some weight upon this point must be admitted; and if I do not sufficiently appreciate its weight, it certainly cannot be owing to any want of respect for the judgment of the distinguished gentlemen who constituted the majority of the court.
The indictment which is adjudged to be defective, it will be seen by the report of the case in 2 Caines, 304, had previously been before the court; and no objection taken to it in this particular, although the judgment was arrested for another reason; the improper withdrawal of a juror. The great and leading question before the court, on the second indictment, was not as to the sufficiency of the first indictment, but whether a party who had been once tried for an offence, could be again put upon his trial for the same* matter. Throughout the whole case, not a single authority is cited upon the law of conspiracy, or the form of an indictment for that offence. The attention of the court was not drawn to *that subject, and in all their remarks upon the sufficiency of the indictment, they evidently treat it as an indictment for obtaining money by false pretences, and test its sufficiency by the rule applicable to such a case. Being a minor point in the cause, their attention does not seem to have been called to the distinction between an indictment for a conspiracy as a substantive offence, and an indictment for a cheat effected in pursuance of a conspiracy.
But a closer examination, I apprehend, will detect a material distinction between that indictment and the one now before the court.
In the case before us, the indictment charges a conspiracy by wrongful and indirect means to cheat and defraud the insurance company, &c.
I have already considered the term cheat here used, as descriptive of the offence known in law by that name, and endeavored to show that such must, be taken to be it* *648 import; that being used collaterally in an indictment for another offence, it can import nothing short, because nc means being set out, the term itself necessarily includes the means requisite to constitute a cheat in law; that therefore the indictment charges an indictable offencé ; a cheat being such.
Now in Barret & Ward’s case, the indictment charges a conspiracy to cheat under a false pretence of Barret’s securing to be paid to O. D. a certain sum by the transfer of a certain note which he represented to be good, &e. ; in other words, a conspiracy to cheat in a particular manner. If it had only charged a conspiracy to cheat without saying more, the intendment would have been a cheat in law ; but there is no room here for such intendment, because it goes on to state in what manner, and sets out facts, where the law would otherwise have supplied them by intendment. Hence, it becomes necessary to look at the facts set out, in order to determine whether they amount to a cheat or not'. They therefore become material, although unnecessarily set out.
The statement of these pretences cannot be rejected as surplusage, because it is introduced as part of the description of the offence, and as a qualification of it. Had the indictment *charged the offence of conspiracy, and then introduced the statement of these facts to show its execution, such statement would not have been material; but, upon the principles of the law of conspiracy before stated, might have been rejected as surplusage, the offence being complete, whether the conspiracy was executed or not. If, therefore, this part of the indictment become material, for the reasons stated, the decision of the court does not affect the question in this cause. It is not a decision that the means must be set out in the indictment; but a decision that where they are set out as part of the description of the conspiracy itself, and as qualifying the offence, they become material, and must be correctly set out.
These considerations induce me to regard this case as much less important in its bearing upon the cause before *649 us, than it seems to have been regarded by others ; and as by no means conclusive to show against the current of authorities before noticed; that the means of execution must necessarily be set out in an indictment for conspiracy, or that they ought to have been spread upon the record before us.
The indictment in this case alleges that the insurance company and other persons were cheated and defrauded by means of the conspiracy charged, of divers bonds, mortgages, notes, dec. And the question here arises, whether an executed conspiracy is not merged or lost in the felony or misdemeanor which may have been committed in pursuance of it. If a conspiracy to commit a felony is executed, there can be no doubt but the conspiracy, being a misdemeanor, is merged in the felony, upon the familiar principle that a lesser offence is merged in the greater; and I understand the doctrine of merger to be applicable only to cases of that description. The case before us is a conspiracy, which is a misdemeanor, to commit a cheat, which is also a misdemeanor.
The argument is not exactly that one misdemeanor is merged in another; but that where the conspiracy to commit a misdemeanor is executed, the conspiracy becomes a part of the misdemeanor which was its object; and that in such casey an indictment does not lie for the conspiracy alone. This argument appears to proceed upon the supposition which has *before been noticed that every conspiracy must be to perpetrate an indictable offence, or an act by means which would be indictable; for otherwise, if it be true, as I have endeavored to show, and as I think was the case in the cause in Maryland, that a conspiracy may be indictable, although the act to be done, if executed by an' individual, or the means made use of, would not be indictable, it follows that the conspiracy, which is a misdemeanor, may be merged in acts which do not of themselves amount to a misdemeanor. The consequence would be that a conspiracy might be indictable, if not executed, which if executed would not be. A further consequence seems also to be involved; that the commission of one *650 misdemeanor would be a defence to another. As in case' of an indictment for an assault, proof that it was accom panied by battéry would be a defence. So proof of an intent to murder, to an indictment for an assault and battery. There are, in this case, different grades of the same misdemeanor; and although it is true, that, on an indictment for an assault, the defendant cannot, be convicted of a battery, yet the converse in not true; and it cannot lyi doubted that proof of a battery would- be no defence to a charge of assault, or that a conviction for an assault would not be a bar to an indictment for an assault and battery arising out of the same transaction. The higher grade of the same misdemeanor includes the lesser; but a conviction, for either, grade bars any other prosecution for the same misdemeanor. So, I apprehend, in the case of a conspiracy. It may perhaps be admitted that an executed conspiracy to commit a misdemeanor, is a higher grade of the same offence than a bare unexecuted combination. Yet it by no means follows that a conviction for the latter would not be a bar to an indictment for the former. I cannot entertain a doubt that it would.
The case of the Com. v. Kingsbury, (5 Mass. Rep. 106) is relied upon to sustain this objection; but,1 on examination, it will be found that the object of the conspiracy in that case was, the procurement of goods in a manner amounting to larceny ; and the court very properly held that the conspiracy being a misdemeanor, was merged in the felony. They, *however, go on to say that the same rule would apply in cases of misdemeanor; that “ an intent to commit a misdemeanor manifested by some overt act is a misdemeanor; but if the intent be carried into execution, the offender can be punished but for one offence.” I do not perceive how the general remark is strengthened by this illustration. Granting that the offender can be punished but once for the misdemeanor, it does not thence follow that he may not be punished for the conspiracy. No case is cited by the court in support of this general remark : and it was not called for by the case. The cases cited by the counsel in the cause are far from sustaining *651 the principle. The King v. Sharpless, (1 Leach, 108,) and King v. Charlewood, (1 Leach, 456,) were two of the cases cited, both of which were indictments for larceny. The King v. Doran, (2 Leach, 608,) was another; where there were two indictments for the same offence ; one for a misdemeanor at common law, and the other for the felony under the statute ; and the court held that both could riot be sustained; for the misdemeanor was merged in the felony. The case in Massachusetts, therefore, does not warrant the observation of the judge, that an executed conspiracy is merged in the misdemeanor which maybe the object of it. No other case has been cited in support of the principle.
These views of the case have brought my mind to the most perfect conviction, that, as a general rule, a combination to effect an unlawful object injurious to an individual, certainly to a company so intimately connected with the public interest as was the Sun Fire Insurance Company, is an indictable offence ; and that the object being unlawful, it was not necessary to set out, in the indictment, the means by which the conspiracy was executed; that the indictment in this case does in fact go farther, and sufficiently charges a conspiracy to commit an indictable cheat; and that, therefore, the object being criminal, it was unnecessary to have stated by what means it was to be effected; and that in either case the conspiracy is a Substantive offence not merged by being executed; but punishable as a misdemeanor.
*These views have been strengthened by the second argument of the cause, and by further examination and reflection upon the subject. And notwithstanding it is my misfortune, in this instance, to differ in opinion from some of the members of the court, distinguished for the highest legal attainments, and for powers of mind capable of elucidating any subject; and for whose opinions I entertain an habitual and profound respect; still, the admonitions of conscience remind me, that I cannot, that I ought not, to yield my own judgment upon the subject, unshaken as it is, even by the weight of those opinions. Although a sense of duty,, *652 would always impel me to act in conformity to the dictates of my own understanding, however much I might distrust it under such circumstances, yet, in this case, it is a source of much satisfaction to be able to refer to the unanimous opinion of the supreme court, in support of the conclusion to which I have come.
The argument has been pressed upon the court with much earnestness, that if this view of the case is a correct exposition of the law, we have a crime vague, arbitrary and undefined, a form of indictment calculated to furnish no information to the accused, of the nature of the offence with which he is charged; and that such a crime and such a mode of administering criminal justice, are incompatible with the nature and spirit of our free institutions. That the argument has some weight if addressed to a proper tribunal, I am not disposed to deny ; but that it is properly addressed to a court of justice, I do deny.
The common law of England is the law of this land by the express terms of our constitution. As it is written, whether in the severe language of denunciation against crime, or in the milder precepts of, civil regulation, so it must remain until wiped away by constitutional enactment, ■or modified by legislative interpolation. It belongs not to courts of justice to obliterate or deface it.
Whatever maybe our opinions as to what the law should be, ours is a single duty to administer it as we find it. If, then, the conviction in this case is warranted by that law, *which we are sworn to administer, we must affirm it, whatever may be the consequences to the individual concerned, or to the public as a precedent in other cases.
There can be no precedent so dangerous and destructive as that departure from precedent, which subtitutes the arbi traryand capricious will of a court, for the known, settled and unbending rules of law upon which all depend for the enjoyment of life, -liberty and property.
The clerk now called for the vote upon the question of affirmance and reversal¡ whereupon the same number of members voted for affirmance and reversal. ,
*653 The court being thus equally divided, the casting vot'e . the president was given, by which the
Judgment below was reversed, (b)

 See People v. Gates, 13 Wen. 311. People v. Haynes, 11 Wen. 557.

 This case is reported in 5 Har. & John. Mar. Rep. 317 to 368. It was decided on demurrer to the indictment, which was, in substance, like the present one, (except that the means were set out.) The indictment was unanimously sustained by the supreme court of appeals in Maryland. Vid. post, opinion of Stebbins, senator.

•(21 -lb-would seem to-be a very.high.crime■ or.misdemeanor, though not. a *623 felony. (1 Hawk. P. C. B. 1, ch. 23, § 1 to 7, inclusive. 1 R. L. 410, § 13.)
It appears to be a, felony by the new definition of that word, (N. R. L. pt. 4, ch. 1, tit. 7, § 30;) for it is punishable in the state prison, (id. ch. 1, tit. 3, art. 4 § 53,) which is made the criterion of felony, after the new statutes go into effect, which will be in 1830.

 These opinions are not given in the final report. (Vid. 5 Har. & John. 324, note (a) ).

í) The legislature afterwards interfered in respect to some of the questions presented ir. this cause.
By the New Revised Laws of this State, (pt. 4, eh. 1, tit. 6, $ 8, vol. 2, p. 691-2,) it is now enacted as follows: “ If two or more persons shall conspire, either,
1. To commit any offence; or
2. Falsely and maliciously to indict another for any offence, or to procure another to be charged or arrested for any offence: or,
3. Falsely to move or maintain any suit: or,
4. To cheat and defraud any person of any property by any means winch are in themselves criminal: or,
5. To cheat and defraud any person of any property by any means which, if executed, would amount to a cheat, or to obtaining money or property by false pretences: or,
6. To commit any act injurious to the public health, to public morals, or to trade or commerce: or for the perversion or obstruction of justice or the due administration of the laws :
They shall be guilty of a misdemeanor.”
By § 9, “ No conspiracies, other than such as are enumerated in the last section, (§ 8 supra,) are punishable criminally.”
By § 10, “No agreement except to commit a felony upon the person ol another, or to commit arson or burglary, shall be deemed a conspiracy, unless some act beside such agreement, be done to affect the object thereof, by one or more of the parties to such agreement.”
The above § 8, (with an additional subdivision not adopted, viz. “ To defraud or injure any person in his trade or business,") were introduced and /recommended to the attention of the legislature, in 1828, by the revisers, Messrs. Spencer, Butler and Duer, with the following remarks : “ The preceding enumeration includes all the oases usually considered as conspiracies, except that of a conspiracy to injure an individual by means not in themselves *criminal. The great difficulty in enlarging the definition of this offence, consists in the inevitable result of depriving the courts of equity of the most effectual means of detecting fraud, by compelling a discovery on oath. It is a sacred principle of our institutions, that no man shall be compelled to accuse himself of any crime, which ought not to be violated in any case. Yet such must he the result, or the ordinary jurisdiction of courts of equity must be destroyed, by declaring any private fraud, when committed by two, or any concert to commit it, criminal. Frauds and combinations to defraud, constitute the mass of equity business; and seldom is a case presented where there are not at least two parties to a fraud: The private remedy would thus be utterly destroyed in most cases. Under these circumstances and without reference to what may he supposed to be the existing *654 law, the revisors have prepared the above section, as containing all that is expedient to be enumerated.” Yid. the force of this objection farther con* sidered, and sought to be refuted in the opinion of Stebbius, Senator, in the principal case, ante, 608-9. It may also be doubted whether the statute, even now, completely removes the objection, if it be one; for not only is a man exempt from accusing himself of a legal crime; but also of any thing which is morally degrading, (13 John. 82. 3Yates,429. 1 Browne’s Rep. 376. 2 Yates, 334. 3 Yates, 615. 1 Pennington, 415. 2 Pennington 728,) It will doubtless be conceded of a combination to defraud, that it is disgraceful. A statute would, therefore, seem necessary to remove the latter clause of the rule, before the difficulty suggested by the revisors can be fully removed.
The revisors introduced the 9th section with this remark; “ Necessary to put at rest the doubts and difficulties respecting the common law .offences.” The 10th section, as originally introduced, required an overt act in all cases, not excepting a conspiracy to commit felony, arson or burglary.
The revisors introduced it with the following remarks: “ By a metaphysical train of reasoning, which has never been adopted in any other case in the whole criminal law, the offence of conspiracy is made to consist in the intent; in an act of the mind; and to prevent the shock to common sense, which such a proposition would be sure to produce, the formation of this intent by the interchange of thoughts, is made itself an overt act, done in pursuance of that interchange or agreement. Surely an opportunity for repentance should be allowed to all human beings; and he who has con spired to do a criminal act, should be encouraged to repent and abandon it. Acts and deeds are the subject of human laws; not thoughts and ifttentsi unless accompanied by acts,”